**CRAWFORD HARBOR ASSOCIATES, Plaintiff,**

v.

**BLAKE CONSTRUCTION CO., INC., Defendant and Third-Party Plaintiff,**

v.

**WALLACE–CROSSLY CORP., Third-Party Defendant.**

**Civ. A. No. 86–0250–R.**

United States District Court, E.D. Virginia, Richmond Division.

April 29, 1987.

---

Wyatt B. Durrette, Jr., Donald Lemmons, McCarthy, Roeder, Durrette & Davenport, Richmond, Va., for Crawford Harbor Associates.

S. Miles Dúmville, David B. Irvin, Thomas & Fiske, Timothy G. Hayes, Richmond, Va., for Blake Const. Co.

Henry H. McVey, III, McGuire, Woods & Battle, Richmond, Va., for Southeastern Waterproofing.

John L. Smith, Jr., Outland, Gray, O'Keefe & Hubbard, C. Jay Robbins, IV, Chesapeake, Va., for Walker & Laberge.

Samuel C. Reiner, Siegfried, Kipnis & Rivera, Coral Gables, Fla., for Wallace-Crossly Corp.

## MEMORANDUM

SPENCER, District Judge.

This case originated with the installation of allegedly defective windows in a Portsmouth, Virginia apartment building owned by Crawford Harbor Associates. Crawford Harbor sued the general contractor ("Blake"), who in turn filed a third-party action against the window installation subcontractor ("Walker") and against Wallace-Crossly Corporation, a Florida corporation which is alleged to be the successor in interest to the entity that originally manufactured and warranted the windows in question. Blake invoked Fed.R.Civ.P. 4(e) and Va.Code § 8.01–328.1, the Virginia long-arm statute, to obtain personal jurisdiction over Wallace-Crossly. Wallace-Crossly responded with a motion to dismiss, pleading lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2). Wallace-Crossly contends that it is separate and distinct from the window manufacturer, is not a successor in interest to the window manufacturer, does not engage in Virginia in any of the activities enumerated in the long-arm statute, and "has absolutely no contacts, business or otherwise with the Commonwealth of Virginia."

After a hearing on the motion to dismiss, this Court required Wallace-Crossly to respond to so much of Blake's interrogatories and requests for production of documents as related to jurisdiction. *Lekkas v. Liberian M/V Caledonia*, 443 F.2d 10 (4th Cir.1971) (party asking court to decline jurisdiction subjects itself to obligation of furnishing all information pertinent to decision of its motion). The parties concerned have also filed, at the Court's request, supplemental briefs on all issues they considered material to personal jurisdiction over Wallace-Crossly.

## FACTS MATERIAL TO JURISDICTION

Blake contracted with Walker in January 1981 to install the exterior window system in question. By purchase order dated November 10, 1981 Walker contracted for "Crossly 6100 Series" windows with an entity then known as Crossly Architectural Products, Inc., trading as Crossly Window Company ("Crossly").[1] Crossly delivered these windows and title passed in Virginia. The windows' alleged variance from Crossly's warranties and representations as to their quality forms the substantive legal basis for Blake's and Walker's claim against Wallace-Crossly.

On October 31, 1983, Wallace Window Corporation ("Wallace Window") was formed from the merger of Crossly and Wallace Window Company. Crossly had previously been discharged in bankruptcy with no distribution to creditors. Wallace Window's predecessors had defaulted under financing agreements with Citicorp Industrial Credit, Inc. ("CIC"), and CIC had exercised its right to repossession of collateral under those agreements. Dunbarton Corporation purchased this collateral from CIC on November 14, 1983 and, shortly afterward, established Wallace-Crossly in its present form as a wholly-owned subsidiary.[2]

Wallace-Crossly was the ultimate purchaser, for $550,000 cash, of inventory, plant and equipment at Wallace Window's principal place of business, 3501 N.W. 45th Street, Miami, Florida, along with all patent and license rights, rights to refunds or indemnification, and other "general intangibles." The sale agreement contains the following language:

> nor does Purchaser, by this agreement or otherwise, purport to assume any liabilities of Debtor [Wallace Window], regardless whether associated with the Property [passing under the agreement]....

Since the purchase, Wallace-Crossly has maintained its principal place of business at 3501 N.W. 45th Street in Miami, and has continued to use Wallace Window's former telephone number. Telephone calls to Crossly at another number and address are automatically referred to Wallace-Crossly.

Dunbarton issued an "Advisory to Creditors of Wallace Window Corporation and Crossly Architectural Products, Inc." on December 5, 1983. After noting that Dunbarton had recently acquired "all physical assets ... formerly the property of Wallace Window Corporation and/or it's [sic] subsidiary, Crossly Architectural Products, Inc.," the advisory stated in pertinent part that

> There is no connection or association with or between Wallace-Crossly Corporation and the previous corporate owner of the property, other than the similarity of the name. The previous owners have no personal or corporate financial interest in Wallace-Crossly Corporation.

> Wallace-Crossly Corporation is not responsible for any of the debts or liabilities of either Wallace Window Corporation or Crossly Architectural Products, Inc.

Wallace-Crossly still manufactures and sells some of the same window products formerly produced by Crossly or Wallace Window, and references these products in advertising materials by their former Crossly or Wallace Window series numbers. Wallace-Crossly still produces the former "Crossly 6100 Series" window, the type of window at issue in this suit, now known as the "Wallace-Crossly series 700/750 Horizontal Sliding Window." Walker still purchases parts and replace-

---

1. Wallace-Crossly refers repeatedly in its argument to difficulties concerning the precise names, addresses and telephone numbers of the various Florida entities. Details of this nature, of course, would be peculiarly within the Florida entities' knowledge. This Court will not weigh against Blake and Walker any lack of precision attributable to the Florida entities' remoteness, since one of the main purposes of statutory long-arm jurisdiction is to enable injured claimants to overcome the advantage remoteness confers upon foreign defendants.

2. The assets under discussion were transferred under a sale agreement between CIC and "Wallace Newco Corporation." Newco seems from the record to have been Wallace-Crossly's precursor. In any event, Wallace-Crossly seeks to take refuge in certain provisions of the CIC sale agreement, therefore Wallace-Crossly will be treated as a party to that agreement.

ments for Crossly windows from Wallace-Crossly. Walker alleges that Wallace-Crossly has done business in Virginia since the asset purchase in question.

Jurisdiction-related discovery has revealed no commonality of ownership between Wallace-Crossly and its predecessors. None of Wallace-Crossly's directors or executive officers was employed by either Crossly or Wallace Window in a similar capacity. The only managerial commonality between Wallace-Crossly and the former owners of the assets acquired from CIC consists of one Sales and Project Manager, who is no longer with Wallace-Crossly.[3] Of approximately 440 employees at the production level in the Wallace-Crossly hierarchy, over 100 were formerly employed by Crossly or Wallace Window.

## DISCUSSION

The question of personal jurisdiction, in cases like the one at bar, must be answered by applying a two-part test. "The court must determine whether the [state] long-arm statute is applicable and, if so, whether the exercise of that statutory power will violate the due process clause of the United States Constitution." *Dowless v. Warren-Rupp Houdailles, Inc.*, 800 F.2d 1305, 1306 (4th Cir.1986); *accord August v. HBA Life Insurance Co.*, 734 F.2d 168 (4th Cir.1984); *see Vishay Intertechnology, Inc. v. Delta International Corp.*, 696 F.2d 1062 (4th Cir.1982). The party asserting personal jurisdiction may defeat a Rule 12(b)(2) challenge by making a prima facie showing that both parts of the test are satisfied. *Dowless*, 800 F.2d at 1307.

Blake's and Walker's complaints against Wallace-Crossly sound in tort and contract. Virginia is the situs of the alleged injury, the situs of contract performance, and the domicile of the entities claiming injury and breach. Under its pertinent choice of law principles, Virginia would apply its own law. *See McMillan v. McMillan*, 219 Va. 1127, 253 S.E.2d 662 (1979) (place of inju-

ry); *Madaus v. November Hill Farm, Inc.*, 630 F.Supp. 1246 (W.D.Va.1986) (place of performance). Wallace-Crossly's successor status does not affect the choice of law in this case, because the practical feature of any theory of corporate successor liability—from the traditional fraudulent transfer approaches to the "emerging" strict liability approaches—is that the consequences of the predecessor's acts are visited upon the successor. If the successor is to stand thus in the place of the predecessor, it must do so for all purposes, including personal jurisdiction in the first instance. In deciding whether personal jurisdiction exists in this case, therefore, this Court will apply Virginia law.

■ Under the traditional rule, "where one company sells or otherwise transfers all its assets to another company, the latter is not liable for the debts and liabilities of the transferor." 15 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 7122 (rev. perm. ed. 1983). This rule encompasses products liability claims asserted by an injured plaintiff as well as debts, obligations, and torts of the predecessor corporation. *Id.* at §§ 7123–7123.5.

There are four traditional exceptions to the rule of nonliability:

In order to render the purchasing company personally liable for the debts of the selling corporation, it must appear that (a) there be an agreement to assume such debt; (b) the circumstances surrounding the transaction must warrant a finding that there was a consolidation of the two corporations; or (c) that the purchasing corporation was a mere continuation of the selling corporation; or (d) that the transaction was fraudulent in fact.

*People's National Bank of Rocky Mount v. Morris*, 152 Va. 814, 819, 148 S.E. 828, 829 (1929) (quoting *Luedecke v. Des Moines Cabinet Co.*, 140 Iowa 223, 118 N.W. 456 (1908); *accord* Fletcher at § 7122. Regarding the first exception,

---

**3.** The Sales and Project Manager was Rick Langevin. Blake and Walker have pointed out that "Edward F. Langevin, the former president, treasurer and director of Wallace Window, was employed by Wallace-Crossly, in some capacity,

as of December 31, 1983." After investigation, Wallace-Crossly reports that Langevin's capacity as of December 31, 1983 was that of a non-salaried commission salesperson, and not that of an owner or officer of Wallace-Crossly.

Wallace-Crossly did not agree to assume any liability of its predecessors; instead, the evidence shows that Wallace-Crossly expressly disclaimed such liability.

■ The latter three exceptions share a common thread: each can be at least partly established by showing that the transfer was for less than adequate consideration. *See Ray v. Alad Corp.*, 19 Cal.3d 22, 560 P.2d 3, 136 Cal.Rptr. 574 (1977); *Pepper v. Dixie Splint Coal Co.*, 165 Va. 179, 181 S.E. 406 (1935). Blake and Walker assert that the transfer of assets at issue "might" have included aspects of fraud and that additional discovery "may" indicate that the consideration involved was inadequate. However, Wallace-Crossly (via Dunbarton) bought its predecessor's assets for cash from CIC, the very creditor whom those assets secured. CIC was a member of the class that would stand to lose the most if the inadequate consideration principle did not exist: secured creditors. Nothing before this Court suggests that CIC's right to seize and transfer those assets was anything less than absolute,[4] or that the consideration CIC received was inadequate. Since Blake's and Walker's fraud contention rests entirely on speculation about inadequate consideration, that contention must fail. The inadequate consideration concept also fails to support Blake's and Walker's arguments concerning the de facto merger or mere continuation exceptions.

The "de facto merger" exception has been invoked where one corporation takes all of another's assets without providing any consideration that could be made available to meet claims of the other's creditors ... or where the consideration consists wholly of shares of the purchaser's stock which are promptly distributed to the seller's shareholders in conjunction with the seller's liquidation. . . .

*Alad*, 560 P.2d at 7 (citing *Shannon v. Samuel Langston Co.*, 379 F.Supp. 797 (W.D.Mich.1974); *Malone v. Red Top Cab Co.*, 16 Cal.App.2d 268, 60 P.2d 543 (1936)); *accord Knapp v. North American Rockwell Corp.*, 506 F.2d 361, 365–366 (3d Cir. 1974), *cert. denied*, 421 U.S. 965, 95 S.Ct. 1955, 44 L.Ed.2d 452 (1975). The first part of the quoted statement, which refers to inadequate consideration, has already been discussed. The second part, which focuses on continuity of ownership as a basis for successor liability, disposes of Blake's and Walker's de facto merger argument.

■ The tests applied under the de facto merger exception can be summarized as (1) continuity of management, personnel, physical location, assets, and general business operations (i.e., continuity of enterprise); (2) continuity of ownership;[5] (3) prompt cessation of the seller corporation's operations; and (4) assumption by the purchaser of obligations ordinarily necessary for the uninterrupted continuation of normal business operations of the seller. *E.g., Shannon*, 379 F.Supp. at 801. The most critical element, however, is continuity of ownership. "The essential characteristic of a de facto merger is the succession of the selling corporation's stockholders to stockholder status in the purchasing corporation." Yamin, *The Achilles Heel of the Takeover: Nature and Scope of Successor Corporation Products Liability in Asset Acquisitions*, 7 Harv.J.L. & Pub. Pol'y 185, 231 (1984). The de facto merger cases cited by Blake and Walker accord with this principle. *Philadelphia Electric Co. v. Hercules, Inc.*, 762 F.2d 303, 311 (3d Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985); *Menacho v. Adamson United Co.*, 420 F.Supp. 128, 133 (D.N.J. 1976); *Shannon*, 379 F.Supp. at 801. The absence of continuity of either ownership or management in the case at bar precludes the finding that any de facto corporate reorganization occurred.

**4.** The only affirmative relevant evidence in the record tends to support clear title in CIC: Crossly had previously been discharged in bankruptcy.

**5.** Continuity of ownership normally "results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation, so that they become a constituent part of the purchasing corporation." *Shannon v. Samuel Langston Co.*, 379 F.Supp. 797, 801 (W.D.Mich.1974).

In arguing that Wallace-Crossly comes within the "mere continuation" exception, Blake and Walker stress the evidence that Wallace-Crossly has continued the window manufacturing business of its predecessors and has relied on its predecessors' name recognition in its advertising and in choosing its own name. The traditional continuation exception, however, "requires not merely that the successor continue in the same business as its predecessor, but that the legal and economic ownership be essentially the same both before and after the transaction." Yamin, *supra,* at 226.

In the only case that can be found on point, Virginia applied the continuation exception in its traditional form. In *Pepper v. Dixie Splint Coal Co.,* 165 Va. 179, 181 S.E. 406 (1935), mineral rights holders sued to recover rents and royalties due under a coal lease. In their answer, the defendants stated that Dixie Splint Coal Company, the original lessee ("Dixie I"), had been dissolved in 1920 and succeeded by a family partnership which continued doing business under the same name ("Dixie II"). The partnership was dissolved in 1924, whereupon a new corporation ("Dixie III") was organized under the same name. Dixie II was owned by the same parties as Dixie I and paid Dixie I nothing for its assets. Dixie III was owned by the same parties and paid Dixie II nothing for its assets. During the entire lease term, Dixie I, II and III were under the same management and remained in exclusive possession of the leased premises. The trial court decreed that petitioners could recover only against Dixie III and awarded rents only for the latter portion of the lease term. The Virginia Supreme Court reversed, holding that

> While it is perfectly true that the co-partnership did not expressly assume the debts of the first Dixie Splint Coal Company it is quite apparent that the co-partnership was a mere continuation of the first corporation and to permit the first corporation and the co-partnership to es-

cape liability for the performance of the covenants in the lease would be a fraud. *Id.* at 191, 181 S.E.2d at 410. The identity of ownership and management and the absence of consideration for the assets transferred were the most important factors in the court's decision.

In *Dawejko v. Jorgensen Steel Co.,* 290 Pa.Super. 15, 434 A.2d 106 (1981), a state court had to decide whether to extend the traditional exceptions to the nonliability rule to cover product continuation situations in products liability cases, or to adopt a separate "product line" exception. The *Dawejko* court reasoned as follows:

> One may retain the traditional exceptions but expand their boundaries, so that "merger" or "continuation" are held to include cases they once would not have included. Or one may adopt a new exception, such as the product-line exception. We believe it better to adopt a new exception. To the extent the law has changed—and so far ... it has changed in relatively few jurisdictions—the change may be explained as an attempt to implement "the social policies underlying strict products liability." [ ] By adopting a new exception, this impetus is acknowledged and made plain, the other exceptions then remaining, to deal with cases not so much affected by the policy considerations that have led to the rule of strict liability for defective products.

424 A.2d at 111 (citation omitted). This Court will not expand the boundaries of Virginia's traditional continuation exception, particularly in the absence of any of the three continuity factors relied upon by the Virginia Supreme Court in *Pepper.*[6]

As the *Dawejko* court noted, the product line exception is a strict liability principle. *Accord Alad,* 560 P.2d at 11; *Turner v. Bituminous Casualty Co.,* 397 Mich. 406, 244 N.W.2d 873, 881 (1976); *Cyr v. B. Offen & Co., Inc.,* 501 F.2d 1145, 1153–54 (1st Cir.1974). Virginia has not adopted the product line exception. *See* R. Steven-

---

6. The fact that many of Wallace-Crossly's production-level employees were formerly production-level employees of Wallace-Crossly's predecessors is relevant only to liability theories that focus solely on continuity of business opera-

tions. The same is true of the possibility that Wallace-Crossly supplied windows in Virginia at some time after it purchased the assets of the manufacturer of the windows at issue.

son, *Virginia and West Virginia Products Liability* § 7–4 (1983). This Court is not at liberty to introduce a strict liability principle into Virginia law. *Goodbar v. Whitehead Brothers*, 591 F.Supp. 552 (W.D.Va. 1984), *aff'd sub nom. Beale v. Hardy*, 769 F.2d 213 (4th Cir.1985); *Gravins v. International Playtex, Inc.*, 586 F.Supp. 251 (E.D.Va.1984); *see also Leannais v. Cincinnati*, 565 F.2d 437, 441 (7th Cir.1977) (no basis for adding product line exception to state law).

Because there is no basis to conclude that any purposeful activity by the manufacturer of the windows in question can be attributed to Wallace-Crossly under Virginia law, Wallace-Crossly's motion to dismiss will be granted.

### ORDER

For the reasons stated in the accompanying memorandum, the motion of Wallace-Crossly Corporation to dismiss the third- and fourth-party complaints against it is GRANTED and the same are hereby DISMISSED. The motion of Wallace-Crossly Corporation for costs incurred is DENIED.

The stay of proceedings previously entered in this case is DISSOLVED.

SO ORDERED.