929 F.2d 691
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
ACME BOOT COMPANY, Plaintiff-Appellee,
v.
TONY LAMA INTERSTATE RETAIL STORES, INC., successor in
interest to Desperados American Wear, Inc.,
Defendant-Appellant,
and
Desperados American Wear, Inc., Robert W. Davies, Defendants.
ACME BOOT COMPANY, Plaintiff-Appellant,
v.
TONY LAMA INTERSTATE RETAIL STORES, INC., successor in
interest to Desperados American Wear, Inc.,
Defendant-Appellee,
and
Desperados American Wear, Inc., Robert W. Davies, Defendants.
ACME BOOT COMPANY, Plaintiff-Appellee,
v.
TONY LAMA INTERSTATE RETAIL STORES, INC., successor in
interest to Desperados American Wear, Inc.,
Defendant-Appellant,
and
Desperados American Wear, Inc., Robert W. Davies, Defendants.
 Nos. 90-2621, 90-2630, and 90-2637.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 29, 1990.
Decided March 26, 1991.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Chief District Judge. (CA-89-227-A)
 H. Bradley Evans, Jr., Hazel, Thomas, Fiske, Weiner, Beckhorn & Hanes, P.C., Alexandria, Va. (Argued), for appellant; Anthony W. Hawks, Hazel, Thomas, Fiske, Weiner, Beckhorn & Hanes, P.C., Alexandria, Va., on brief.
 Thomas W. Kirby, Wiley, Rein & Fielding, Washington, D.C. (Argued), for appellee; Frank Winston, Jr., Wiley, Rein & Fielding, Washington, D.C., on brief.
 E.D.Va.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 Before ERVIN, Chief Judge, WILKINS, Circuit Judge, and HIRAM H. WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 This action involves the propriety of granting summary judgment on the issue of successor liability. Finding that there exist genuine issues of material fact, we hold that summary judgment was improper. The district court also refused to grant attorney's fees because of the doctrine of merger. We find that the district court properly applied that doctrine and affirm the refusal. Finally, the district court found that the claim in this case was not part of any bankruptcy estate, and therefore was not a proper bankruptcy action. Finding no error in that ruling, we affirm. For the above reasons, we affirm in part, reverse in part, and remand to the district court for further proceedings.
 
 I.
 
 2
 In April of 1989, Desperados American Wear, Inc. ("Desperados"), was in financial difficulty, having been late paying its trade creditors for some time. Two of those creditors were Acme Boot Company ("Acme") and Tony Lama Interstate Retail Stores, Inc. ("Lama"). Acme sued Desperados and its owner Davies in February 1989 and received a default judgment against both on May 8, 1989. In April, Acme and Lama negotiated a deal whereby Lama would pay cash for certain trade fixtures and the trade name "Desperados." Lama also agreed to assume the leases under which the stores were currently operating. Lama did not purchase any of the non-Lama inventory owned by Desperados. At this time, Davies and Lama entered into an employment agreement under which Davies would work for Lama for a period of 5 years, earning $75,000 a year. In addition, Davies could earn "incentive compensation" relating to a percentage of the net sales of the four Desperados stores.
 
 
 3
 On April 21, 1989, pursuant to the agreements above, Lama paid $5,750 for the trade fixtures to Davies and First American Bank, which had a security interest in the trade fixtures. Davies immediately endorsed the check to First American Bank. Lama also paid Desperados $10,000 by check which was immediately endorsed by Davies and returned to Lama for credit against Desperados' trade debt with Lama. At the time of the transactions, both sides were actively represented by counsel, who drafted and reviewed the closing documents. Each counsel also wrote an opinion letter stating his belief that the conveyance was valid and not fraudulent.
 
 
 4
 After the consummation of the deal, Lama took over the operations of the four Desperados stores the very next day. Representatives of Lama met with managers of Desperados, offering them employment with Lama if they chose to resign from Desperados. Significantly, 20 of 21 employees did so. The employees of the store immediately began answering the phone "Tony Lama" instead of Desperados. However, the large signs in front of the stores continued to say "Desperados" until November 1989, when they were replaced with "Tony Lama" signs. Banners were displayed in the windows of the store saying Tony Lama, but there was no specific indication that the stores were under new management.
 
 
 5
 Other immediate changes included new point of sale terminals (i.e., cash registers), the banners in the windows, Tony Lama name tags on the employees, and Tony Lama price tags on the merchandise for sale. There was testimony that the credit card machines were immediately changed over to Tony Lama; however, that testimony conflicted with credit card receipts that Acme offered which showed the Desperados stamp on them as late as July 1989. Davies continued to operate as manager for a short time. However, he no longer reported to himself, but reported to Lama management. In a short time, Davies' duties changed from management to marketing.
 
 
 6
 Acme brought suit in the United States District Court for the Eastern District of Virginia against Lama, seeking to join Lama to the default judgment against Desperados pursuant to Fed.R.Civ.P. 25(c) on the grounds of successor liability. Both parties moved for summary judgment at the close of discovery. After a hearing on the motions, the district court granted summary judgment in favor of Acme, thereby imposing successor liability on Lama for the Acme default judgment.
 
 
 7
 Thereafter, Acme filed a motion for costs and attorney's fees incurred in pursuing the joinder action. The district court denied the motion.
 
 II.
 
 8
 The first issue before us is whether the district court erred in granting summary judgment to Acme, imposing successor liability on Lama. Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is not proper "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, on appeal, we must view the evidence in the light most favorable to Lama, who was the nonmoving party, to determine if there was any genuine issue of material fact. Rivanna Trawlers Unltd. v. Thompson Travelers, 840 F.2d 236, 239 (4th Cir.1988).
 
 
 9
 The district court granted summary judgment to Acme on the theory of successor liability. Thus we must determine if there were any genuine issues of material fact relating to the issue of successor liability.
 
 
 10
 Under the traditional rule, when one company sells or transfers all its assets to another company, the latter is not liable for all the debts and liabilities of the transferor. Crawford Harbor Ass'n v. Blake Construction Co., 661 F.Supp. 880, 883 (E.D.Va.1987); Bud Antle, Inc. v. Eastern Foods, Inc., 758 F.2d 1451 (11th Cir.1985); Kemos, Inc. v. Bader, 545 F.2d 913, 915 (5th Cir.1977). "This rule encompasses products liability claims asserted by an injured plaintiff as well as debts, obligations, and torts of the predecessor corporation." Crawford Harbor Ass'n, 661 F.Supp. at 883. However, most jurisdictions recognize four exceptions to this rule. Bud Antle, 758 F.2d at 1456; Peoples Nat'l Bank of Rocky Mount v. Morris, 152 Va. 814, 819, 148 S.E. 828, 829 (1929). Courts will hold the buying corporation liable for the seller's debts if (1) the buyer expressly or impliedly agreed to assume such debts; or (2) the transaction amounts to a de facto merger of the buyer and seller; or (3) the buying corporation is a mere continuation of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape liability for such debts. Crawford Harbor Ass'n v. Blake Construction Co., 661 F.Supp. 880, 883 (E.D.Va.1987); Bud Antle, 758 F.2d at 1456-57. Inadequate consideration is a fifth exception recognized by some jurisdictions; other jurisdictions treat it as an additional factor to be considered within the above four exceptions. Budd Tire Corp. v. Pierce Tire Co., 90 N.C.App. 684, 687, 370 S.E.2d 267, 269 (1988).
 
 
 11
 The district court gave two exceptions as possible bases for granting summary judgment: de facto merger and mere continuation. The de facto merger exception arises when a transaction results in a de facto merger of two entities. Most jurisdictions consider the following four elements in deciding whether there has been a de facto merger:
 
 
 12
 (1) There is continuation of the enterprise of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations.
 
 
 13
 (2) There is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation.
 
 
 14
 (3) The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible.
 
 
 15
 (4) The purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.
 
 
 16
 Bud Antle, 758 F.2d at 1458; Howard v. APAC-Georgia, Inc., 192 Ga.App. 49, 383 S.E.2d 617, 618-19 (1989); Crawford Harbor Ass'n, 661 F.Supp. at 884.
 
 
 17
 Many jurisdictions have held that the most important element is the continuity of ownership in element (2) above. See, e.g., Crawford, 661 F.Supp. at 884 (finding no de facto merger under Virginia law because of the absence of continuity of ownership or management); Bud Antle, 758 F.2d at 1458 (finding no de facto merger because "[a]t the very least, there must be some sort of continuation of the stockholders' ownership interests); Travis v. Harris Corp., 565 F.2d 443, 447 (7th Cir.1977) (under Ohio law, "[a]bsent a transfer of stock, the nature and consequences of a transaction are not those of a merger."). Acme points out that some jurisdictions do not require all factors to be present. See Lumbard v. Maglia, Inc., 621 F.Supp. 1529, 1535-36 (S.D.N.Y.1985) (holding that not all factors are required to demonstrate a merger); Menacho v. Adamson United Co., 420 F.Supp. 128, 133 (D.N.J.1976) (stating that the factors are only indicators of merger, and all are not required). Jurisdictions appear to differ on this issue, and Virginia law is silent on the matter. Regardless of the view that Virginia would take on this matter, there remain numerous factual determinations to be made under this test.
 
 
 18
 In this case, several facts remain in dispute which are essential in determining whether there was a de facto merger. Two of those facts are: (1) whether the employment agreement could be construed to be some form of ownership, thus meeting the continuity of ownership requirement; and (2) whether there was continuity of the enterprise given that the Lama management ran the business from its Texas office after the purchase, while the in-store changes were relatively minor. Critical to these issues is a resolution of exactly when certain changes occurred. For example, one disputed fact is the date when the credit card machines were changed, indicating that operation was a Tony Lama business rather than continuing to be Desperados. Because the de facto elements require factual determinations based on evidence which is in dispute, summary judgment based on the de facto theory was improper.
 
 
 19
 The district court cited the "mere continuation" exception as the second basis for granting Acme's summary judgment motion. The seminal case regarding this exception sets out the test for mere continuation as "whether there is a continuation of the corporate entity of the seller--not whether there is a continuation of the seller's business operation.... The key element of a 'continuation' is a common identity of the officers, directors and stockholders in the selling and purchasing corporations." Bud Antle, supra, 758 F.2d at 1458-59. In Bud Antle, the Eleventh Circuit found no continuation of management or ownership even though some of the officers of the selling company were employed by the buying company: "[M]ere employment is insufficient to warrant application of the continuation exception." 758 F.2d at 1459.
 
 
 20
 In 1985, the Eighth Circuit stated that a majority of courts considering the "mere continuation" exception emphasize the Bud Antle factors above. Further, the Crawford district court interpreted Virginia law in this regard and noted:
 
 
 21
 In the only case that can be found on point, Virginia applied the continuation exception in its traditional form. ... The identity of ownership and management and the absence of consideration for the assets transferred were the most important factors in the court's decision.
 
 
 22
 661 F.Supp. at 885.
 
 
 23
 Under the mere continuation exception, there must be identity of the officers, directors and stockholders in the selling and purchasing corporations. Here again, a factual determination must be made in order to resolve this issue. It is unclear whether Lama's employment of Davies constituted a continuity of ownership. Davies did not own any stock in the corporation after the sale. Further, Davies was no longer the boss, as Lama's Texas office took over the management of the stores. However, Davies' employment might be construed as a form of ownership, given the incentive package he received. Whether Davies' ownership continued is an issue requiring factual determinations based on disputed evidence.
 
 
 24
 Another factual determination at issue is whether management was continuous in light of the fact that 20 of 21 former Desperados employees continued working for Lama, while Lama management from Texas also became involved in running the stores. These factual issues must be resolved before we can say that there was a continuity of ownership. Viewing the evidence in the light most favorable to Lama, we cannot say that there was no genuine issue regarding the continuity of management, directors, and stockholders.
 
 
 25
 Acme asserts that another ground for the court's ruling can be found in the fraudulent conveyance exception. The fraudulent conveyance exception prevents the selling corporation from selling itself to another corporation in order to defeat its creditors. National Carloading Corp. v. Astro Van Lines, 593 F.2d 559, 563 (4th Cir.1979). Acme relies on the allegedly inadequate consideration paid for the assets and the "illusory" nature of the deal to show fraud in the conveyance. Acme's own choice of words indicates that summary judgment would be inappropriate under this exception. There is evidence on both sides as to whether the consideration paid was adequate or not. There is also evidence in the form of opinion letters of counsel, testimony of witnesses, and affidavits that conflict with regard to whether the events were "illusory." Such facts must be determined in order to rule whether there was fraud in this conveyance, and summary judgment would be improper under this exception as well.
 
 
 26
 In sum, there are numerous factual determinations that must be made before we can determine if successor liability should be imposed upon Lama. Therefore, summary judgment was improperly granted on this issue.
 
 III.
 
 27
 Another issue before us is whether the district court correctly refused to award attorney's fees to Acme. Because we are remanding this case for further proceedings, we address this issue in order to give guidance to the district court if presented with this issue on remand. As an appellate court, we review the decision to grant attorney's fees under the abuse of discretion standard. Federal Deposit Ins. Corp. v. Aroneck, 643 F.2d 164 (4th Cir.1981); In re Hunt, 754 F.2d 1290 (5th Cir.1985); Blackburn v. Goettel-Blanton, 898 F.2d 95 (9th Cir.1990).
 
 
 28
 The doctrine of merger prevented the district court from granting attorney's fees to Acme. The Virginia Supreme Court has explained the doctrine of merger as follows:
 
 
 29
 Merger occurs when a valid and final personal judgment for money is entered for plaintiff. His original cause of action is merged into the judgment and is extinguished. Plaintiff can maintain a subsequent action only on the judgment and not on the original cause of action.
 
 
 30
 Bates v. Devers, 214 Va. 667, 670 n. 3, 202 S.E.2d 917, 920 n. 3 (1974). Here, Acme asserts that it has rights to attorney's fees based on the promissory note between Acme and Desperados which provided that Desperados would pay attorney's fees. However, Acme did not request attorney's fees in its request for a default judgment against Desperados. As a result, a default judgment was entered against Desperados only for the amount which Desperados owed under the note. When the judgment was entered against Desperados, the doctrine of merger operated, and afterwards, Acme's only possible action was on the judgment and not on the underlying note.
 
 
 31
 Acme later moved to join Lama to the judgment based upon the theory of successor liability under Fed.R.Civ.P. 25(c). Acme relied upon derivative liability through Desperados to bring Lama into court at all. Acme now argues that the action against Lama is somehow separate in order to try to avoid the merger doctrine. Acme cannot have it both ways. We find that the district court properly applied the doctrine of merger in this case. Therefore, we affirm the district court's refusal to grant attorney's fees.
 
 IV.
 
 32
 The final issue we must address is whether the bankruptcy proceedings of Desperados barred the joinder of Lama to the Desperados judgment. The district court found that this case did not involve a bankruptcy matter, and we agree. Lama asserted that Acme's claim against Lama was a diminution of a bankrupt's estate because Desperados had filed for bankruptcy. If Lama's assertion was correct, the claim would be subject to the exclusive jurisdiction of the Desperados bankruptcy trustee pursuant to 11 U.S.C. Sec. 541. However, we do not agree with Acme that its claim against Lama is a part of the bankruptcy estate of Desperados.
 
 
 33
 A trustee's duty in bankruptcy is to "collect and reduce to money the property of the estates for which such trustee serves." 11 U.S.C. Sec. 704(1). Here, the claim against Lama is not property of the estate. It is not a claim that the bankrupt, Desperados, had against Lama which the trustee should properly pursue and reduce to money. Desperados has no claim against Lama as Lama owed no money to Desperados. Rather, this is a claim that Acme, a creditor, is pursuing against a third party, Lama, on the grounds of successor liability. It is a claim that Acme originally had against Desperados and then sought to pursue against Lama on the theory of derivative liability. There is no property of the bankrupt for the trustee to collect, as Lama did not purchase any of Acme's non-Lama inventory when it took over.[1] As the Supreme Court has noted, "there is nothing in the [bankruptcy code] that enables [the trustee] to collect money not owed to the estate." Caplin v. Marine Midland Grace Trust, 406 U.S. 416, 428 (1972).
 
 
 34
 We find that Lama did not owe any money to the Desperados bankruptcy estate. The district court did not err in ruling that this claim was not a bankruptcy issue at the time of the proceedings before that court.[2] Therefore, we affirm the district court's ruling.
 
 V.
 
 35
 To summarize, we find that the entry of summary judgment in favor of Acme was in error as there are material facts in issue which must be resolved. Therefore, we reverse the order granting summary judgment to Acme. We agree with the district court that the merger doctrine prevented the award of attorney's fees to Acme; therefore, we affirm the court's refusal to grant attorney's fees. Finally, we agree that this case did not involve a bankruptcy matter and therefore affirm the district court's finding on that issue.
 
 
 36
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 37
 WILKINS, Circuit Judge, concurs in part and dissents in part.
 
 
 38
 WILKINS, Circuit Judge, concurring in part and dissenting in part:
 
 
 39
 While I agree that grant of summary judgment in favor of Acme was erroneous, I believe summary judgment in favor of Lama is appropriate. Viewed in the light most favorable to Acme, the undisputed facts demonstrate that Acme cannot, as a matter of law, establish the requisite continuity of ownership between Lama and Desperados that is necessary to impose successor liability upon Lama under either a de facto merger or a mere continuation theory.
 
 
 40
 Desperados was owned solely by Davies. Davies, however, had no actual ownership interest in Lama nor was Davies an officer or director of the Lama organization. Although it is undisputed that no continuity of directors or stockholders existed between Desperados and Lama, Acme contends that identity of "ownership" existed in the two companies by virtue of Davies' employment contract with Lama. Because no material facts concerning the provisions or execution of the employment contract are disputed, the critical issue is whether, as a matter of law, the employment contract rises to the level of an ownership interest for purposes of establishing the continuity of ownership necessary to impose successor liability.
 
 
 41
 Under Virginia law, the continuity of ownership requirement is satisfied for purposes of the mere continuation theory when " 'the legal and economic ownership [are] essentially the same both before and after the transaction.' " Crawford Harbor Assocs. v. Blake Const. Co., 661 F.Supp. 880, 885 (E.D.Va.1987) (quoting Yamin, The Achilles Heel of the Takeover: Nature and Scope of Successor Corporation Products Liability in Asset Acquisitions, 7 Harv.J.L. & Pub.Pol'y 185, 226 (1984)). Similarly, " '[t]he essential characteristic of a de facto merger is the succession of the selling corporation's stockholders to stockholder status in the purchasing corporation.' " Id. at 884 (quoting Yamin, supra, at 231). Other courts that have discussed the continuity of ownership requirement have also found that the stockholders of a corporation selling its assets must be stockholders of the purchasing corporation in order for successor liability to attach. See, e.g., Bud Antle, Inc. v. Eastern Foods, 758 F.2d 1451, 1458 (11th Cir.1985) (no successor liability because "no transfer of stock took place"); Dayton v. Peck, Stow & Wilcox Co. (Pexto), 739 F.2d 690, 693 (1st Cir.1984) (no successor liability because no shareholders of former corporation were shareholders of corporation purchasing its assets); Tucker v. Paxson Mach. Co., 645 F.2d 620, 625-26 (8th Cir.1981) (no successor liability when no continuity of shareholders, directors, or officers); Travis v. Harris Corp., 565 F.2d 443, 447 (7th Cir.1977) (no successor liability when cash, as opposed to stock, is transferred in consideration for assets).
 
 
 42
 The majority does not foreclose the possibility that the employment contract may not be sufficient to establish continuity of ownership and implicitly instructs the fact finder to determine on remand whether the employment contract was sufficient. Remand is unwarranted, however, because this is not a factual question. Rather, I believe resolution of the issue necessitates a legal conclusion that I would decide in Lama's favor. In my opinion, Davies' employment contract, as a matter of law, does not constitute the type of continuity of ownership that would provide a basis for the imposition of successor liability on Lama. Consequently, I would direct entry of summary judgment for Lama.
 
 
 
 [1]
 We note that the trustee has taken no action with regard to this sale, nor has it attempted to set aside the transfer of assets as fraudulent
 
 
 [2]
 The trustee has taken no action to set aside the transfer of assets as fraudulent, and there is no evidence that the trustee intends to take any action in this regard. Therefore, this matter continues to be a matter not involving bankruptcy