## CIRCUIT COURT OF FAIRFAX COUNTY

Craig J. Beden
and Gordon M. Kimpel

   v.

Optimum Choice, Inc., et al.

November 21, 1995

Case No. (Law) 135926

BY JUDGE DENNIS J. SMITH

The matters before the Court are Defendants' Motion to Set Aside the Verdict or for Judgment Notwithstanding the Verdict, Defendants' Motion for a New Trial, and Plaintiffs' Motion for Award of Costs. Following oral argument on October 13, 1995, the Court took the matters under advisement for further consideration. The Court has fully reviewed counsels' briefs and submissions.

As submitted to the jury, this case involved a breach of contract claim brought by Plaintiffs Craig J. Beden and Gordon M. Kimpel against Defendants Optimum Choice, Inc. ("OCI"), Mid-Atlantic Medical Services of Virginia, Inc. ("MAMSOVA"), and Mid-Atlantic Medical Services, Inc. ("MAMSI"). At trial Plaintiffs claimed that Defendants breached a written Commission and Service Agreement ("CSA") and/or an oral exclusive agreement in which Defendants contracted to pay commissions to Plaintiffs, as brokers, based on sales of Defendants' medical insurance health plan. Plaintiffs further asserted that as an added incentive for Plaintiffs' services, the parties agreed that Plaintiffs would have the exclusive

right to market the health plan to the Northern Virginia Association of Realtors ("NVAR"), and in reliance on this arrangement, Plaintiffs worked for over a year to obtain NVAR's endorsement. When this sponsorship was imminent, Defendant allegedly advised NVAR that by circumventing the brokerage arrangement and contracting with Defendants directly, NVAR could reduce costs to its members by the amount of Plaintiffs' commissions. It was undisputed that NVAR informed Plaintiffs of its intention to contract directly through Defendants.

After a lengthy trial, the jury awarded Plaintiffs $260,830.00 in damages. This amount represents Plaintiffs' estimation of lost earnings over a five-year period. Defendants now request the Court to overturn this verdict or, alternatively, to order a new trial.

## I. Motion to Set Aside Verdict and J.N.O.V.

In evaluating Defendants' motion, the Court must evaluate the evidence in the light most favorable to the prevailing party. *Graves v. National Cellulose Corp.*, 226 Va. 164 (1983). A jury's verdict may be set aside only "when there is no evidence at all to support the verdict, or else the verdict is plainly contrary to the evidence . . . ." *Ellison v. Railway Co.*, 154 Va. 39, 45 (1930). In reviewing Defendants' motions, the Court has considered all of the arguments made by Defendants but only provides a written opinion with regard to the following.

## A. The Oral Exclusive Contract Fails for Want of Consideration

Defendants allege that Plaintiffs did not provide consideration in exchange for the exclusive contract because they had a pre-existing duty to perform under the CSA. Furthermore, Plaintiffs' special efforts at marketing the health plan and the additional expenses that they incurred were provided in consideration for a one percent increase in commission, not for an exclusivity arrangement. The evidence was in conflict, however, as to whether Plaintiffs increased their efforts to target NVAR and to obtain its endorsement in consideration for the additional one percent rate of commission, or in exchange for the exclusive arrangement, or both.

> Consideration is, in effect, the price bargained for and paid for a promise. It may be in the form of a benefit to the party promising or a detriment to the party to whom the promise is made. It matters not to what extent the promisor is benefited or how little the promisee may give for the promise. A very slight advantage

to the one party or a trifling inconvenience to the other is generally held sufficient to support the promise.

*Dulany Foods, Inc. v. Ayers,* 220 Va. 502, 511 (1979), quoting *Brewer v. Bank of Danville,* 202 Va. 807, 815 (1961).

The Court finds that the evidence presented at trial was sufficient for a jury to have determined that consideration existed to support the oral exclusive contract. Therefore, the Court denies Defendants' motion on this ground.

### B. *Plaintiffs' Damages Are Limited by the Notice Rule*

The jury's $260,830.00 verdict reflects estimated damages for a five-year period. Defendants argue that this time frame is too long. According to the "notice rule," recognized by other jurisdictions, "where a contract provides for its termination by either party on notice of a specified number of days, profits may be recovered for only that length of time." *Smalley Transp. Co. v. Bay Dray, Inc.,* 612 So. 2d 1182, 1188 (Ala. 1992). Defendants argue that because the oral exclusive agreement was a modification of the CSA, the original CSA's 90-day notice provision applies, and Plaintiffs' recovery should be limited to the estimated amount earned in the 90-day period.

At trial, Plaintiffs suggested alternative theories regarding the exclusivity arrangement. Although one theory was that the oral contract modified the original CSA, Plaintiffs argued in the alternative that the exclusivity agreement was an entirely separate arrangement, distinct from the written CSA and subject to its own terms. If the jury accepted this second theory, the 90-day notice provision of the CSA would not automatically apply to the oral agreement. Similarly, the jury could have found that the oral modification of the CSA eliminated the 90-day notice provision. If the jury did so find, then the "notice rule" would be equally irrelevant to the original CSA. As there was evidence to support these alternative theories and the jury could have accepted either of Plaintiffs' proposals, the Court denies Defendants' motion on this ground.

As for Defendants' argument that the five-year period is unreasonable, in the absence of any contractual provision, damages recoverable for breach of contract are "such as may reasonably be supposed to have been contemplated by both parties at the time they made the contract, as the probable result of the breach of it." *Manss-Owens Co. v. H. S. Owens & Son,* 129 Va. 183, 201 (1921). Sufficient evidence existed for the jury to determine that five years was reasonably contemplated by the parties when

they entered into the contract. Accordingly, the Court denies Defendants' motion on this ground.

## C. *Damages Incorrectly Reflect Lost Revenue Instead of Net Profits*

In the alternative, Defendants argue that the jury's award should be set aside because it improperly reflects Plaintiffs' lost earnings as opposed to their lost profits. At trial, the evidence Plaintiffs introduced as to lost earnings was the exact value that the jury awarded. In response, Plaintiffs argue that in reality, the amount that the jury returned reflected their lost commissions which is an appropriate measure of damages for breach of a commission contract.

The appropriate measure of damages for breach of a contract for a specified period of time is the value of the contract. *Manss-Owens Co. v. Owens*, 129 Va. 183 (1921). Damages should put the injured party "in the same position as money can do it, as he would have been if the contract had been performed." *Lehigh Portland Cement Co. v. Virginia Steamship Co.*, 132 Va. 257, 270 (1922). In *Manss-Owens*, the Court determined that lost profits adequately reflected the value of the contract. *Id.*

As indicated below in the Court's discussion of Defendants' Motion for New Trial, the jury was instructed to award Plaintiffs all *losses* sustained by them. During Defendants' cross examination of Mr. Richman, the jury was made aware that Plaintiffs' estimate did not reflect lost profits, but rather lost revenue. Evidence presented at trial indicated that some factors which Plaintiffs' expert omitted in his estimate would have increased the estimated earnings, while others may have decreased it. For example, although evidence indicated that NVAR was more than twice the size of WDCAR, for the purposes of his calculations, Mr. Richman assumed that NVAR and WDCAR were the same size. Therefore, the jury may have determined that Plaintiffs would have earned even more than the estimate Plaintiffs presented at trial, and accordingly, the ultimate amount awarded by the jury may have, in fact, reflected Plaintiffs' net profits. The Court finds that such a determination would be supported by credible evidence. In *Manss-Owens v. Owens*, the Court stated, "it is for the jury, under proper instructions, to determine the compensation to be awarded for [a] breach." 129 Va. at 203. The Defendant's motion on this ground is therefore denied.

### D. *The Oral Exclusive Contract Was Terminable At Will*

Virginia adheres to the traditional rule that "when the intended duration of a contract for the rendition of services cannot be determined by fair inference from the terms of the contract, then either party is ordinarily at liberty to terminate the contract at will, upon giving the other party reasonable notice." *Miller v. SEVAMP, Inc.*, 234 Va. 462, 465 (1987). However, when substantial additional consideration is provided for a contract of an indefinite period, the contract binds the parties for a reasonable period of time. *Allied Equipment Co. v. Weber Engineered Products*, 237 F.2d 879, 881 (4th Cir. 1956); *see also Plaskitt v. Black Diamond Trailer Co.*, 209 Va. 460 (1968).

Plaintiffs presented evidence at trial to establish that in exchange for Defendants' exclusivity offer, they provided consideration in the form of out-of-pocket expenses and substantially greater marketing efforts. In addition, evidence was introduced that Plaintiffs spent more time and money in their efforts to obtain an endorsement by NVAR than they did in merely selling insurance to *individual* realtors. The jury was properly instructed regarding the doctrine of employment "at will." They were instructed that if they found the alleged oral exclusive agreement obligated the Plaintiffs to do only those things that they were obligated to do under the written agreement, then they must find that the oral agreement lacked consideration, and the defendant's would not be bound thereby. (Instruction CC.) They were also instructed that they must find the oral exclusive agreement to be a contract "at will" unless they found it to be supported by substantial additional consideration. (Instruction OO.) The Court finds that Plaintiffs presented adequate evidence at trial for the jury to determine that the contract was not "at will" in accordance with these instructions. Therefore, the Motion is denied on this ground.

### E. *No Valid Contract Existed Between Plaintiffs and OCI*

Defendants argue that the contract between Plaintiffs and OCI terminated when MAMSOVA, a successor corporation, took over OCI's business. The prevailing rule in Virginia is that, absent an agreement to the contrary, a successor corporation is not responsible for the debts and liabilities of its predecessor. *See Crawford Harbor Assoc. v. Blake Construction Co.*, 661 F. Supp. 880, 883 (E.D. Va. 1987). An exception to this rule exists in situations where "the purchasing corporation [is] a mere continuation of the selling corporation." *Crawford*, 661 F. Supp. at 883. Evidence presented at trial established that after MAMSOVA took over,

the officers, directors, stockholders, employees, managers, and staff did not change. Furthermore, officers of MAMSOVA continued to refer to MAMSOVA in Virginia as Optimum Choice, not only as a health plan, but also as a business. This evidence was therefore sufficient to enable the jury to determine that MAMSOVA was a mere continuation of OCI, and the Court declines to accept Defendants' argument. The Motion on this ground is denied.

## II. *Motion for New Trial*

The decision of whether or not to grant a motion for a new trial is discretionary with the Trial Court. § 8.01-383. Defendants presented three grounds for the Court to consider in deciding whether they were given a fair trial.

### A. *Damages are Limited to Expenditures by Plaintiffs*

With respect to damages, the jury was read the following instruction:

> If you find your verdict for the plaintiffs, then they are entitled to recover as damages all of the losses he sustained, including gains prevented, which are a direct and natural result of the breach and which they have proved by the greater weight of the evidence. The losses must have been reasonably foreseeable by the parties when they entered into the contract.

Although Defendants did not propose an alternative measure of damages at trial, they now argue that this instruction was improper because Plaintiffs were only entitled to recover the expenditures they incurred in reliance on the oral contract. Defendants rely on *Allied Equipment Co. v. Weber Engineered Products, Inc.*, 237 F.2d 879 (4th Cir. 1956). *Allied* involved a wholesale distributor's action against the manufacturer of its products for breach of an exclusive distributorship contract. The Court held that because the distributor expended money in reliance on the contract, the manufacturer was not free to terminate the contract at will but, rather, was obligated to retain its agent for a reasonable period of time until the distributor recouped its expenditures. Defendants argue that, according to *Allied*, when a contract is removed from the "at will" category based on payment of substantial additional consideration, the "reasonable period of time" for which the non-breaching party is entitled to recover is only that period of time needed for it to recoup those expenditures it incurred in reliance on the contract; therefore, the jury's award of Plaintiffs' estimated lost earnings over a period of five years was improper.

No cases other than *Allied* were cited or found to support Defendants' position because Defendants' interpretation of *Allied* is misplaced. *Allied* relies on 4 Williston, Contracts § 1027A(3) (Rev. ed. 1936), which states:

> It is well settled that, where an employed agent, in reliance upon his agency and with the knowledge of the principal, expends funds in the interest of the agency and of the principal, the principal is committed to the agency for a reasonable period of time, so that the agent may thus recoup his expenditures. As Professor Williston says, "It is the settled law of agency that if the agent or employee furnishes a consideration in addition to his mere services, he is deemed to have purchased the employment for *at least* a reasonable period where the duration of the employment is not otherwise defined." [Emphasis added.]

237 F.2d at 882.

A fair reading of this passage is that the principal is bound to the employee/agent for a reasonable period. It would not be reasonable to set this period for less than the time necessary to recoup expenses, but the reasonableness of the period is not limited to this time frame.

Additionally, Defendants never raised this issue at trial. There is no mention of it in Defendants' Trial Bench Brief, nor did Defendants object to it through a proposed jury instruction. The only objection Defendants raised with regard to the extent of damages was that Plaintiffs' recovery should be limited to damages incurred during the ninety days following termination pursuant to the notice provision in the CSA, a contention which was addressed and dismissed above. Furthermore, Defendants did not raise this issue in their Memorandum in Support of the Motion to Set Aside the Verdict but raised it for the first time in their Reply to Plaintiffs' Opposition to Defendants' Motion to Set Aside the Verdict.

Rule 5:25 of the Rules of the Supreme Court of Virginia states:

> Error will not be sustained to any ruling of the trial court or the commission before which the case was initially tried unless the objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice.

Furthermore, in *Spitzli v. Munson*, 231 Va. 12 (1986), the Virginia Supreme Court held that Defendant's subsequent motion to set aside the verdict did not save him from his failure to object to the instructions given

at trial. The underlying policy for this harsh rule was expressed in *Hurt v. Newcomb*: "The litigant is not allowed to remain silent, to take his chances of a favorable verdict, and, afterward, to raise an objection when he receives an unfavorable decision." 242 Va. 36, 39 (1991). Although technically Rule 5:25 and these cases refer only to appeals made after the trial court no longer has jurisdiction, the policy behind them still applies.

For the reasons stated, the Defendants' motion is denied.

## B. *Damages Are Too Speculative and Uncertain to Allow Recovery*

According to the "new business rule," prior and subsequent business records of another, similar business are only admissible to prove damages sustained by an *established* business. When an unestablished business is involved, the jury may not consider this type of proof because it does not provide "a reasonable basis upon which to judge with any reasonable certainty what the profits would have been." *Goldstein v. Kaestner*, 243 Va. 169, 172 (1992).

Defendants rely primarily on *Mullen v. Brantley*, 213 Va. 765 (1973), to support their position that the sale of OCI to NVAR is an unestablished business. The issue in *Mullen* was whether lost profits of a "Shakey's" Pizza Parlor could be established through profits of another Shakey's in the same area and the national average of all Shakey's Pizza Parlors. The Court held that this Shakey's was a new business, in spite of the fact that Shakey's was part of an established national chain. In making its determination, the Court emphasized that this Shakey's was in close proximity to numerous other pizza parlors, including another Shakey's two blocks away. It would be too difficult for a jury to determine the effect of this direct competition on Shakey's business; such a determination could be "based only on speculation and conjecture." 213 Va. at 769.

However, Courts have not been quick to categorize a business as "unestablished." In *Manss-Owens v. Owens*, 129 Va. 183 (1921), the case upon which Plaintiffs rely in their brief, the Court allowed Plaintiffs to recover anticipated future profits for an exclusive contract to sell shoes. Plaintiffs were permitted to introduce evidence as to the probable amount of sales they would have made had they been able to perform the contract. The Court stated: "the best way to make an intelligent estimate of this value [profits] was to consider the extent of the territory and the past experience of the plaintiffs in selling goods of a similar character in that territory." 129 Va. at 205.

Numerous other cases address this issue; however, the ultimate determinations are extremely fact specific. The basic question is whether Plaintiffs have produced "sufficient facts and circumstances that will permit a jury to make an intelligent and reasonable estimate of the amount [of damages]." *Commercial Business Systems v. BellSouth Services*, 249 Va. 39, 49 (1995) (permitting introduction of revenue and cost records of similar business undertakings).

In estimating the probable damages, the Plaintiffs' expert, Anatole Richman, considered actual commissions received by Plaintiffs for sales of GHA to NVAR and for sales of OCI's health plan to WDCAR. He did not consider the demographics of the WDCAR and the NVAR, the number of members who already had insurance or were covered through their spouses, or the existence of other insurance carriers who may have been in direct competition with plaintiffs. However, all of these discrepancies were pointed out to the jury during Defendants' cross-examination of Plaintiffs' expert. The jury was presented with a track record of the Plaintiffs' sales of similar products to similar groups, and therefore, they had sufficient facts and circumstances to make an intelligent and reasonable estimate of the amount of damages. Defendants' Motion for a New Trial on this basis is denied.

## C. *Plaintiffs' Expert's Testimony Was Impermissible Hearsay*

Defendants contend that Plaintiffs' expert, Mr. Richman, should not have been permitted to testify that he formed his opinion on the basis of his friends' opinions. By doing so, Defendants argue, Mr. Richman testified to the opinion of his friends, which is impermissible hearsay.

Virginia Code § 8.01-401.1 expressly authorizes an expert to base his opinion on hearsay. At trial, Mr. Richman testified that he believed five years was a reasonable time to determine Plaintiffs' loss and that he based this belief on his friends' opinions. The Code clearly permits this type of testimony. The evidence regarding Mr. Richman's friends' opinions was not introduced for its substance, but rather to demonstrate the basis of Mr. Richman's expert testimony. Additionally, there was no objection at trial to this testimony. Accordingly, the Motion for New Trial is denied on this ground.

## D. *Exclusion of Defendants' Expert Was Error*

Prior to trial, the Court granted Plaintiffs' motion to exclude the testimony of Defendants' expert, economist John Wills. According to a Court

Order, Defendants were required to provide a report disclosing the anticipated testimony of their experts within five days after deposing Plaintiffs' expert. This deposition was completed on July 7, 1995, but Defendants did not submit Mr. Wills' report until July 27, fifteen days late, which was four calendar days and two business days before trial. The Court finds that the exclusion of Defendants' expert was an appropriate sanction for this significant violation of a Discovery Order. Therefore, Defendants' motion is denied on this ground.

### E. *Admission of Testimony of Marion Turner and Diane Blaine*

Defendants contend that Plaintiffs should not have been permitted at trial to call as witnesses Marion Turner and Diane Blaine. The existence and anticipated testimony of these witnesses were not revealed to Defendants in Plaintiffs' initial discovery responses, and Defendants claim that allowing them to testify unfairly prejudiced them.

Although Plaintiffs did not inform Defendants of Turner and Blaine's existence in their first discovery response, they did notify Defendants through a supplementary interrogatory response on July 20, 1995. Furthermore, because both Turner and Blaine were Defendants' employees, Defendants were in the best position to have knowledge of any pertinent information that Blaine or Turner may have possessed. For these reasons, the Defendants' motion is denied on this ground.

### III. *Plaintiffs' Motion for Award of Costs*

Plaintiffs have also filed a motion seeking an award of costs based on expert witness fees, copying trial exhibits, service fees, reporting services, copies of deposition transcripts, and copies of the trial transcript and the transcript of Defendants' expert's testimony for preparation of post trial motions and appeal. Virginia Code § 14.1-178 permits the Court to award costs to "the party for whom final judgment is given." The decision to award costs falls entirely within the discretion of the trial judge. *City of Richmond v. County of Henrico*, 185 Va. 859 (1947). In this case, the Court finds that the reasonable expenses necessary for prosecution of the case are filing fees, copying trial exhibits, and service fees.