MARY E. WALSH vs. CHESTNUT HILL BANK AND TRUST
COMPANY & another.[1]

Suffolk. October 8, 1992. - February 12, 1993.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Fraud. Bank. Contract*, Rescission, Implied covenant of good faith and fair
dealing. *Consumer Protection Act*, Unfair act or practice. *Practice,
Civil*, Amendment, Special questions to jury. *Uniform Partnership Act*.

In an action against a bank for breach of contract, fraud, and breach of
the covenant of good faith and fair dealing, the judge correctly denied
the plaintiff's motion for leave to amend the complaint to include a
count for violation of G. L. c. 93A, where the motion was untimely,
having been filed on the day before the first day of trial and eighteen
months after the original complaint was filed. [286-287]

In an action against a bank arising out of a commercial loan agreement in
which the jury determined that the bank's conduct was negligent, but
not wilful, the judge correctly ruled that the plaintiff was not entitled to
rescission of the agreement, as the plaintiff had not restored or offered
to restore the benefit she had received under the agreement. [288-289]

On a claim alleging breach of a partnership agreement, the defendant's
motions for judgment notwithstanding the verdict and for a new trial
were correctly denied. [290-293]

CIVIL ACTION commenced in the Superior Court Department on December 27, 1988.

The case was tried before *J. Owen Todd*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Mark A. Berthiaume* (*Christopher A. Matherly* with him) for the plaintiff.

*Nancy F. Gans* for Bernard J. Doherty.

---

[1]Bernard J. Doherty.

*Kenneth J. Mickiewicz* (*Jo Anne Rosenblum* with him) for Chestnut Hill Bank and Trust Company.

ABRAMS, J. These appeals arise out of a partnership agreement between Mary E. Walsh and Bernard J. Doherty as partners in a real estate partnership (Brandon Group) and a loan agreement between the Brandon Group and Chestnut Hill Bank and Trust Company (bank). The complaint against the bank included, among other claims, claims for fraud and deceit and breach of the covenant of good faith and fair dealing. Walsh appeals from the judge's denial of her motion to amend her complaint to include a claim under G. L. c. 93A (1990 ed.) against the bank. She also asserts that the bank should be required to rescind the loan agreement. Doherty appeals from the denial of his motions for judgment notwithstanding the verdict and for a new trial. We transferred the case on our own motion. We affirm the judge's denial of the motion to amend, his denial of Walsh's request that he grant rescission of the contract, and the relief granted. We affirm the judge's denial of Doherty's motions for judgment notwithstanding the verdict and for a new trial.

1. *We summarize the relevant facts in Walsh's appeal.* Walsh and Doherty agreed in 1985 to form a partnership, the Brandon Group, to conduct real estate business in Charlestown. As part of their business, they approached the bank in order to negotiate a $400,000 line of credit. Pursuant to the terms of the loan agreement, the bank took mortgages on property that Doherty owned in Lincoln, New Hampshire, and property that Walsh owned in Newport, Rhode Island. The bank notified Walsh by letter that it had first mortgages on the property in Lincoln, New Hampshire. Sometime after that, but before the loan agreement was signed, the bank became aware that its mortgage on one parcel of the New Hampshire property was a second mortgage, not a first mortgage. The bank did not inform Walsh that its mortgage on this parcel was a second mortgage.

Walsh sued the bank alleging a variety of claims.[2] See *supra*. The day before trial was scheduled to begin, she moved for leave to amend her complaint in order to allege a violation of G. L. c. 93A. The judge reserved the c. 93A claims. The remainder of the case was tried to a jury who answered special questions. See Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974).

With respect to the case between Walsh and the bank, the jury found that (1) the bank violated its covenant of good faith and fair dealing with Walsh; (2) the bank did not intentionally make false representations of material fact to Walsh on which she relied to her detriment; (3) the bank did negligently make false representations of material fact to Walsh on which she reasonably relied to her detriment; and (4) Walsh did not bring her claim against the bank for the purpose of obtaining an advantage or concession with respect to her obligations under the loan agreement. After hearing the answers to the special questions, Walsh requested that the judge cancel or rescind the loan agreement. She did not offer to repay the money or any portion of the money that the Brandon Group had received under the loan agreement with the bank.

In his memorandum of decision and orders, the judge ruled on the plaintiff's motion for leave to amend the complaint to include a count against the bank for violation of G. L. c. 93A. The judge found, "Despite the latitude and leniency counseled by [Mass. R. Civ. P. 15 (a)] the request to further amend the already prolix complaint came too late." In addition, the judge found that the bank's "conduct in the transaction was neither unfair or deceitful." Conse-

---

[2]In her request for relief in connection with her allegation of conspiracy to defraud against both the bank and Doherty, Walsh did ask that the defendants pay her the resultant damages as well as interest and attorney's fees. The docket sheet reveals that the conspiracy count was dismissed. Walsh has not argued error in the dismissal of that count. Therefore, error, if any, is deemed waived. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975); *Boston Hous. Auth.* v. *Guirola*, 410 Mass. 820, 827 n.9 (1991). On this record, Walsh requested only equitable relief in her case against the bank.

quently, the judge denied Walsh's request to amend her complaint.

The judge considered Walsh's request that the loan agreement either be cancelled or rescinded. The judge determined that rescission was not appropriate given the particular facts, circumstances, and equities of the case. The judge did rule that the bank "be required to proceed against collateral put up by . . . Doherty in the event of a foreclosure of the security before it proceeds against the collateral put up by" Walsh.

a. *The motion for leave to amend.*[3] In *Castellucci v. United States Fidelity & Guar. Co.*, 372 Mass. 288, 292 (1977), we said that "[a] liberal amendment policy does not justify overriding the rights of a person who would be prejudiced by the last minute allowance of a motion to amend."

Walsh notes that the G. L. c. 93A theory of liability rose from the same set of facts as the other theories in her complaint and that the allowance of the amendment would not have prejudiced the bank. Walsh had already amended her complaint once, to add a count under G. L. c. 93A against the other defendant, Doherty. She was aware of the facts of her case and the possibility that those facts might support a c. 93A claim against the bank. She moved for leave to amend more than eighteen months after she had filed her original complaint and the motion came on the eve of the scheduled first day of trial. Walsh unreasonably delayed amending her complaint. A "plaintiff's undue delay in pressing these claims justifies the judge's refusal to allow the amendment." *United States Leasing Corp. v. Chicopee*, 402

---

[3]Rule 15 (a) of the Massachusetts Rules of Civil Procedure, 365 Mass. 761 (1974), provides a framework for amending pleadings. "A party may amend his pleading once as a matter of course at any time before a responsive pleading is served and prior to entry of an order of dismissal or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

Mass. 228, 233 (1988), citing *Castellucci v. United States Fidelity & Guar. Co., supra* at 289-292. See *Hamed v. Fadili*, 408 Mass. 100, 106 (1990); *Barbosa v. Hopper Feeds, Inc.*, 404 Mass. 610, 621-622 (1989). "While 'undue delay' may justify a denial [of a motion to amend], [we] usually require[ ] some factor other than delay, such as the imminence of trial or the plaintiff's attempting to introduce a totally new theory of liability." *Goulet v. Whitin Mach. Works, Inc.*, 399 Mass. 547, 552 (1987). There is an additional element here because Walsh moved to amend on the day before the scheduled first day of trial.

More importantly, however, the record reveals that the judge, in substance, did rule on Walsh's c. 93A claim. Before denying the motion, the judge heard the evidence. After the trial and after receiving the jury's responses to the special questions, the judge determined that "the Bank's conduct in the transaction was neither unfair or deceitful" and then denied Walsh's motion to amend. There was no error.

We may not set aside a fact finder's findings of fact unless they are clearly erroneous. *First Pa. Mortgage Trust v. Dorchester Sav. Bank*, 395 Mass. 614, 621 (1985). See Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974).[4] We must be definitely and firmly convinced that the fact finder made a mistake before we will reject its determinations. *First Pa. Mortgage Trust, supra* at 621.[5]

Walsh argues that, because the jury found that the bank had made negligent misrepresentations, the judge's determi-

---

[4] Rule 52 (a) of the Massachusetts Rules of Civil Procedure, 365 Mass. 816 (1974), states, in pertinent part, that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

[5] The bank argues that we need not review the judge's determination because it was made in the context of deciding a motion, an action which should be reviewed under an abuse of discretion standard. "The general rule is that a denial of a motion to amend is discretionary." *LeBlanc v. Welch*, 333 Mass. 207, 210 (1955). Given the delay, the imminence of trial and the fact that the judge heard the evidence and the jury's decision, we agree that the judge did not abuse his discretion in denying the motion to amend.

nation that the bank did not engage in any unfair or deceitful acts or practices was clearly erroneous. We do not agree. "[N]ot every negligent act is unfair or deceptive and thus unlawful under G. L. c. 93A, § 2." *Swanson* v. *Bankers Life Co.*, 389 Mass. 345, 349 (1983). The judge determined that the acts were not unfair or deceptive. Walsh was not entitled to have this issue decided by a jury. "[T]he equitable nature of the relief permitted [under c. 93A] . . . leads us to conclude that there is no right to a trial by jury for actions cognizable under G. L. c. 93A." *Nei* v. *Burley*, 388 Mass. 307, 315 (1983). There was no error in his denial of Walsh's motion for leave to amend.

b. *The request for rescission.* Walsh suggests that the judge should have granted rescission of the loan agreement. She relies on Restatement (Second) of Torts § 551 and comment h (1977).[6]

"[A] false, though innocent, representation which concerns a matter susceptible of knowledge . . . may afford the basis of rescission." *Bellefeuille* v. *Medeiros*, 335 Mass. 262, 265 (1957). Ordinarily, a party requesting rescission must "restore or offer to restore all that he received" through the contract, although it "has been held that, where complete restoration is not possible, rescission may, nevertheless, be granted upon such equitable conditions as would amply protect the rights of the defendant." *Id.* at 266. Both parties cite numerous cases from within and without the jurisdiction on whether this remedy requires that the party requesting re-

---

[6]Subsection 2 of § 551 reads: "One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated, . . . (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so . . . ."

Comment h reads: "One who, having made a representation which when made was true or believed to be so, remains silent after he has learned that it is untrue and that the person to whom it is made is relying upon it in a transaction with him, is morally and legally in the same position as if he knew that his statement was false when made."

scission "restore or offer to restore" all or a portion of what she has received.

Walsh may not have entered into the loan agreement had she known that the mortgage on Doherty's property was not a first mortgage. She did, however, sign the loan agreement. As a principal in the partnership, she did receive a benefit of almost $400,000 from the loan agreement. She has not offered to return it or any portion of it. The jury determined that the bank was negligent, not wilful. In such circumstances, there was no error in not granting rescission of the loan agreement. *Bellefeuille* v. *Medeiros, supra* at 266.

c. *The relief granted Walsh against the bank.* Walsh claimed that the bank represented to her that the mortgages on Doherty's property were in excess of the amount of the line of credit and that it would proceed against Doherty first. The jury did not receive a special question concerning the making of such a representation. Under Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974), when a question of fact is omitted from the questions submitted to the jury, "each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury." Neither party demanded the question of this alleged misrepresentation be submitted to the jury so both have waived a jury trial with regard to it. Rule 49 (a) continues: "As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict." See *Solimene* v. *B. Grauel & Co., KG,* 399 Mass. 790, 800-802 (1987), for a discussion of the procedure under rule 49 (a). The jury concluded the bank was negligent. The judge appears to have considered the determination of the jury. When granting relief, the judge ordered that the bank proceed against Doherty's property first. The bank has not appealed from that ruling. "[F]ailure to take a cross appeal precludes a party from obtaining a judgment more favorable to it than the judgment entered below." *Boston*

*Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37, 43 n.5 (1977).[7]

2. *Doherty's appeal. a. The denial of his motions for judgment notwithstanding the verdict.* Walsh sued Doherty alleging among other things breach of contract, fraud, deceit, breach of fiduciary duty, and breach of the covenant of good faith and fair dealing. The jury found that (1) Doherty violated the partnership agreement with Walsh; (2) under the partnership agreement, each partner was responsible for 50% of the losses; (3) Doherty violated his fiduciary duty to Walsh; and (4) Doherty did not intentionally make false representations of material fact to Walsh on which she reasonably relied to her detriment. The jury awarded monetary damages for the breach of the partnership agreement but no damages for the breach of fiduciary duty. Doherty appeals from the denial of his motions for judgment notwithstanding the verdict and for a new trial.

The standard for reviewing the denial of a motion for judgment notwithstanding the verdict is "whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.' *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978), quoting *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972)." *Dobos* v. *Driscoll,*

---

[7]The bank also argues that, even if it had represented that it would proceed against Doherty first, Walsh could get no relief because she failed to prove that she suffered any injury as a result of any misrepresentation the bank made. "[T]he plaintiff must show . . . a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception." *International Fidelity Ins. Co.* v. *Wilson*, 387 Mass. 841, 850 (1983). "[D]amages are an essential element of the cause of action" under G. L. c. 93A, § 11. *Weeks* v. *Harbor Nat'l Bank*, 388 Mass. 141, 144 n.2 (1983). Walsh claims that the negligent misrepresentation induced her to enter into the loan agreement and to continue to draw on the line of credit, thereby increasing her exposure to the bank. Walsh claims the increased exposure is her damage. The bank argues that it has neither foreclosed on the collateral Walsh pledged as security nor altered the terms of the loan agreement. Only the properties the Brandon Group purchased have been foreclosed by another bank. Because we conclude that the judge did not abuse his discretion or err as a matter of law, we do not discuss any issues concerning damages.

404 Mass. 634, 656, cert. denied sub nom. *Kehoe* v. *Dobos*, 493 U.S. 850 (1989). We therefore summarize the evidence in the light most favorable to the plaintiff.

In December, 1985, Walsh and Doherty formed a partnership to buy real estate in Charlestown. A partnership agreement, drafted in September, 1986, specified that 75% of the profits would be assigned to Walsh and 25% would belong to Doherty. There was evidence that Walsh and Doherty also agreed that both parties would contribute to capital on an equal basis; that both parties would share the partnership expenses equally; and that the partnership's losses would be split evenly between the parties.

The partnership bought three properties in 1986; one of the properties was sold the same year. The partnership held onto the other two. Walsh contributed over $229,000 to capital while Doherty had contributed only $5,000, despite Walsh's repeated demands that he contribute more. Without more capital, Walsh was unable to meet the expenses of the partnership and the two remaining properties were foreclosed on by another bank. Doherty purchased these properties at the foreclosure sale for prices below the market values.

Doherty argues that Walsh presented no evidence to show that his breach of the agreement to make equal contributions to the capital of the partnership caused either the partnership's or Walsh's losses. He uses the testimony of Walsh's accountant and expert, James E. Feeney, to show that the partnership would have sustained losses even if Doherty had contributed capital. Doherty asserts that the evidence did not establish that the damage caused by the foreclosures on the property the partnership owned was not a result of the decline in the real estate market or of Walsh's failure to pay the mortgages on the property.

Walsh argues that the expert's testimony provided evidence from which the jury could have concluded that she had been damaged by Doherty's breach of the agreement. She asserts that, had Doherty made capital contributions, her effective capital return would have been $118,467. Instead, her capital account balance is a negative $158,830. Walsh states

that the jury was entitled to believe her expert's testimony about her damage.[8]

Given the expert's testimony, we cannot say that there was no evidence on which a jury could have premised liability. There was no error in the denial of the motion for judgment notwithstanding the verdict.

b. *The motion for new trial.* The jury's answer to the special question stated that it awarded Walsh "[$234,425]. The award is [Walsh's] capital contributions, from 1986 to 1989 to the Brandon Group."[9] Doherty argues that the jury's damage award operated as a rescission. He asserts that the judge should have granted his motion for a new trial on the damages issue.

"It is settled that it 'is only in an extraordinary case revealing an abuse of judicial power, or an excess of jurisdiction or similar error, that the action of the trial court upon a motion for a new trial can be reversed,' *Berggren* v. *Mutual Life Ins. Co.*, 231 Mass. 173, 176 [1918]." *Cohen* v. *Peterson*, 320 Mass. 315, 316 (1946). In addition, we have stated that motions for a new trial on the theory that the damages were inadequate or excessive "ought not to be granted unless on a survey of the whole case it appears to the judicial conscience and judgment that otherwise a miscarriage of justice will result." *Bartley* v. *Phillips*, 317 Mass. 35, 41 (1944), quoting *Davis* v. *Boston Elevated Ry.*, 235 Mass. 482, 496 (1920).

---

[8]Doherty points out weaknesses and assumptions in the expert's testimony which he asserts undercut its validity. The credibility of the witness was for the jury and the decision whether to credit the testimony or reject it was for the jury, not this court.

[9]The form of Special Question No. 2, and its answer, read: "If you have answered Question 1 in the affirmative (YES), please state in words what you find to be the amount of damages, if any, to the plaintiff, Mary E. Walsh, caused by the breach.

"$     234,425
   (Write in figures)
The award is plaintiff's capital contributions, from 1986 to 1989 to the Brandon Group.
   (Write in words)"

Doherty argues that the jury's award to Walsh was inconsistent with her theory of the case and that, having sued on the contract, she was not legally entitled to rescission. Nonetheless, the jury was entitled to credit Feeney's testimony that Doherty's breach damaged Walsh in the amount of $277,297. The jury awarded a lesser amount. There was no error in denying the motion for new trial based on the damages awarded.

Doherty also asserts that the judge erred in denying his motion for new trial on the ground that the jury's verdict with respect to the allocation of losses under the partnership agreement was against the weight of the evidence. The partnership agreement stated that the profits would be divided so that 75% went to Walsh and 25% went to Doherty but said nothing about the division of losses. Doherty claims that the Uniform Partnership Act, as adopted in Massachusetts, G. L. c. 108A, § 18 (*a*), requires that, where the partnership agreement is silent as to the division of losses, losses are divided in the same way as profits.[10]

Walsh states that the partners had agreed orally to a certain allocation of the losses, and that allocation was 50% to Walsh and 50% to Doherty. As Walsh notes, § 18 (*a*) of the Uniform Partnership Act controls when there is no agreement. Walsh asserts there was an agreement. She presented the testimony of the lawyer who drew up the agreement, her accountant and a bookkeeper. She also testified to the 50/50

---

[10]General Laws c. 108A, § 18 (*a*) (1990 ed.), reads, in pertinent part: "The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules: (a) Each partner shall be repaid his contributions, whether by way of capital or advances to the partnership property, and *share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied; and must contribute towards the losses, whether of capital or otherwise, sustained by the partnership according to his share in the profits.*"

split of losses herself. The record supports the judge's denial of Doherty's motion for a new trial.

*Judgment affirmed.*