McHugh, J.
I. BACKGROUND
The individual defendants in this case are former employees of the plaintiff. They left the plaintiff to work for the defendant, Graphics LXCorp. (“GLXj. Plaintiff claimed in this action that the individual defendants and GLX were engaging in unfair competition and a variety of related acts. After the action started, defendants asserted a series of counterclaims, including a claim that plaintiffs commencement of this action itself amounted to an abuse of process and, ás a result, a violation of G.L.c. 93A.
After trial, the jury returned a verdict in favor of defendants on all of the plaintiffs claims. The jury found for the individual defendants on their claims for abuse of process and knowing and willful violations of G.L.c. 93A[1] but also found that their damages were zero. The jury also found that plaintiff wrongfully interfered with the advantageous relations between GLX and third parties, that such interference was a knowing and willful violation of G.L.c. 93A but again that the damages were zero. Finally, the jury found that commencement of this action against GLX amounted to an abuse of process, that the abuse of process amounted to a knowing and willful violation of G.L.c. 93A and that the corporation suffered as a consequence damages in the amount of $625,000.
In the wake of those verdicts, the parties have filed a series of motions that are resolved, for the following reasons, in the following fashion:
II. PLAINTIFF’S MOTION FOR JUDGMENT N.O.V. OR FOR A NEW TRIAL
A. Standard of Review
In considering a motion for judgment n.o.v., the court cannot weigh conflicting evidence. Instead, the court must uphold the verdict as long as “anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor” of the verdict winner. Brown v. Gerstein, 17 Mass.App.Ct. 558, 560 (1984).
The standard for ruling on a motion for a new trial is less constricting. Nevertheless, in ruling on such a motion, the trial judge cannot simply act as a thirteenth juror. See Clapp v. Haynes, 11 Mass.App.Ct. 895, 896 (1980), quoting Borras v. Sea-Land Serv., *598 Inc., 586 F.2d 881, 887 (1st Cir. 1978). Instead, the trial judge may “set aside the verdict only if he [or she] is satisfied that the jury failed to exercise an honest and reasonable judgment in accordance with controlling principles of law.” Hartmann v. Boston Herald-Traveler Corp., 323 Mass. 56, 60 (1948). In other words, the question to be faced when the trial judge is presented with a motion for a new trial is whether allowance of the motion is necessary to prevent a failure of justice. Davis v. Boston Elevated Railway Co., 235 Mass. 482, 495-96 (1920). In ruling on the motion, the trial judge “may, and indeed should, judge credibility and weigh conflicting evidence.” Smith & Zobel, Rules Practice, 8 Mass. Prac. Series 442 (1977). In the last analysis
[a] motion to set aside a verdict as against the evidence is addressed to the sound discretion of the judge. “It is the right and duty of a judge presiding at the trial of a civil case to set aside the verdict of a jury when in his [or her] judgment it is so greatly against the weight of the evidence as to induce in his [or her] mind the strong belief that it was not due to a careful consideration of the evidence, but that it was the product of bias, misapprehension or prejudice.”
Solimene v. B. Grauel & Co., 399 Mass. 790, 802 (1987).
B. Judgment N.O.V.
Plaintiffs claim of entitlement to judgment n.o.v. is based chiefly on an erroneous legal premise, Le„ that an essential ingredient of a claim for abuse of process is proof that the allegedly abusive claim was groundless, baseless or otherwise without merit. That is not so. Under well established principles of Massachusetts law, the plaintiff in an action for abuse of process, unlike the plaintiff in an action for malicious prosecution, is not required to prove that the action was baseless or meritless. Fishman v. Brooks, 396 Mass. 643, 652 (1986).
To be sure, a party asserting a claim for abuse of process is required to prove that the claim was advanced for an ulterior purpose, i.e., for a purpose other than the one for which the legal proceeding was designed or intended. Gabriel v. Borowy, 324 Mass. 231, 236 (1949). Nevertheless, the ulterior purpose need not be the sole purpose for which the action was commenced; it is instead enough that the action was commenced “primarily to accomplish a purpose for which it [was] not designed.” Restatement (Second) of Torts §682; Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 776 (1986).
Here there was sufficient evidence for a jury to conclude that plaintiff was concerned about the inroads GLX was making on plaintiffs share of the market, inroads achieved through what the jury concluded were perfectly legitimate marketing methods. The evidence also was sufficient to permit the jury to conclude that plaintiff commenced this action chiefly to chill both GLXs ability to obtain needed capital and its ability to persuade potential customers that it could provide long-term support for its complicated and sophisticated product. The evidence in that regard was, of course, not one-sided. But there was enough of it, qualitatively and quantitatively, to enable a jury to conclude that commencement of the action amounted to an abuse of process.
C. New Trial
Plaintiffs motion for a new trial on the question of damages presents a set of different considerations. For two reasons, I am of the opinion that that motion should be granted.
First of all, the verdict was strongly against the weight of the evidence. GLX proffered two basic components of its damage claim. First was the amount of time GLX employees were required to spend defending the action instead of pursuing corporate business activities. Second was the action’s assertedly negative impact on GLX’s ability to sell its product generally and to six specific customers.
The evidence was sufficient to enable a jury to return a verdict compensating GLX for its lost employee time. The evidence suggested that the value of that time was in the range of $42,000 to $57,000. But the overwhelming weight of the evidence was that the action had nothing to do with GLX’s hoped-for profits from the six specific sales on which it focussed. GLX did not ultimately consummate sales to Moore Data Systems, Montgomery News,[2] and Havertown Printing for reasons wholly independent of the action’s commencement or progress. Moreover, the overwhelming weight of the evidence with respect to R.R. Donnelly, Automated Graphics and ZBR Publication is that the sales discussions never passed from the stage of preliminary negotiations to the realistic expectancy of a sale.
There was, to be sure, testimony about the impact of the action on GLX’s overall ability to raise funds after the action was filed in May of 1992. Here again, however, the overwhelming weight of the evidence showed that GLXs inability to raise capital stemmed from problems with GLX’s new machines, the friction between GLX and “Rocky” Rockwall (who was regarded in the industry as the “father” of the process GLX machines used and who was instrumental in developing the products GLX was selling) and the unhappy picture presented by GLX’s balance sheet, not from investor fears about the lawsuit’s impact.
The second reason for requiring a new trial on the issue of damages has to do with the nature of the evidence introduced, over objection, at the trial itself. Well before the trial began, and as a consequence of the parties’ inability at several pretrial conferences to agree on whether each had fully disclosed to the other the damage theories they intended to assert at trial, I issued a series of orders requiring full disclosure of all damage theories. For present purposes, the critical *599 order was issued on July 2, 1993 and, in pertinent part, provided that
[n]o later then July 23, 1993, each side must furnish the other with a damage statement containing (A) a precise statement of all claimed damages and the method by which the damages were calculated, (B) a list of each document the party intends to introduce to prove the damages, (C) the name and address of each witness the party intends to call to testify on the subj ect of damages and, (D) a synopsis of the testimony each such witness will give.
Neither party objected to the order and neither fully complied with it. Of principal importance here, however, is that, in an apparent response to the order, counsel for GLX sent counsel for plaintiff a letter dated September 24, 1993 setting out damage calculations with respect to the six allegedly lost sales described above and the time lost by the GLX employees.
Plaintiffs counsel deposed GLX president Lawrence Murray on September 29 and September 30, 1993. During the depositions plaintiffs counsel was presented with portions of a GLX business plan showing, among other things, projected GLX profits for the years 1992 through 1995. No one, however, made any claims that the damage theories and claims set out in the September 24 letter had been superseded, altered or changed in any way and plaintiffs counsel spent little time at the deposition on those profit projections.[3] Indeed, Murray testified at the deposition that he did not know whether or not GLX had met one of the two profit projections about which he was asked.
When the case came on for trial, plaintiffs counsel stipulated to admissibility of trial exhibit 93, the entire GLX business plan from which the deposition exhibits had been taken.[4] Murray then sought to testify that the profit projections the plan contained, profit projections totalling approximately nine million dollars, had not been reached because of the law suit plaintiff commenced. Although I excluded certain testimony in that regard, the business plan was used to indicate the existence of lost profits and an argument concerning lost profits was made in summation.
Upon all of the circumstances, I am retrospectively persuaded that, notwithstanding the business plan’s stipulated admission, I (1) should have given forceful instructions to the jury that the profit projections the plan described formed no basis whatsoever for any damage calculation and (2) should have prohibited counsel for GLX from arguing in any way, shape or form about those lost profits. A damage claim based on lost profits of the magnitude GLX asserted at trial simply was not disclosed in any timely response to my order of July 2, 1993 and was not subsequently disclosed in any fair and proper way. Particularly when claims of this magnitude and complexity are involved, counsel cannot articulate one damage theory and then, after sticking a document containing the basis for another theory under the opponent’s nose, sit back to see if the opponent is lucky enough, adept enough or willing to consume enough time and money to determine whether another damage theory is lurking in there somewhere.[5]
Quite clearly, the jury did not award anything remotely resembling the generalized lost-profit damages GLX claimed. The damage verdict was greater than the sum of the “lost time” damages and the specific “lost sale” damages GLX asserted. It is difficult to determine, therefore, what precise role those generalized lost profit figures played in the damage verdict. Because the evidence should not have been introduced, because it is not possible to determine the precise basis for the jury’s verdict and because the lost profit testimony had a potentially prejudicial effect of significant proportions, a new trial on the nature and extent of the damage caused by plaintiffs abuse of process is required.[6]
D. The Motion for a New Trial as to Adrian Dalpe.
Plaintiff contends that the jury’s verdict in favor of Adrian Dalpe on plaintiffs claim against Dalpe for unpaid MasterCard charges was so strongly against the weight of the evidence that a new trial should be ordered. I disagree. Dalpe asserted that plaintiff waived Dalpe’s repayment obligation when plaintiff and Dalpe wound up their business relations. Plaintiff disagreed. Although the evidence in plaintiffs favor was quantitatively and qualitatively stronger then the evidence in Dalpe’s favor on that issue, there was evidence in Dalpe’s favor. The jury’s conclusion that Dalpe’s version was correct was not so strongly against the weight of the evidence that a new trial should be ordered.
E. Plaintiffs Motion for a New Trial on Counts IV and V Against GLX.
GLX purchased parts for certain machines directly from third-party suppliers who manufactured those parts in accordance with plans supplied by plaintiff or plaintiffs predecessor. Plaintiff claims that, by purchasing those parts directly from the third-party suppliers, GLX made improper use of plaintiffs proprietary information. Plaintiff contends that the evidence so strongly supported its contention in that regard that the jury’s rejection of its claim entitles it to a new trial.
Again, I disagree. The precise relationship between plaintiff and the parts manufacturers and between those parts manufacturers and the consuming world was not established at trial with the degree of precision plaintiff asserts. Thus, although a verdict in favor of plaintiff on the parts claim was warranted by the evidence, the evidence did not compel such a verdict.
III. PLAINTIFF’S MOTION TO ALTER OR AMEND THE JUDGMENT
As stated earlier, on the counterclaims for abuse of process asserted by the individual defendants, the *600 jury returned a verdict of liability but awarded zero damages. (Counterclaim, Count II.) On the counterclaims for interference with advantageous relationships asserted by GLX, the jury also found liability but again awarded zero damages. (Counts III and IV.) After return of those verdicts, the Court ordered entry of judgment in favor of the individual counterclaimants on Count II and in favor of GLX on Counts III and IV in the nominal amount of six cents. Plaintiff contends that, under those circumstances, an award of nominal damages was error.
On review of cases plaintiff has cited, I agree. Quaranto v. Silverman, 345 Mass. 423, 427 (1963), states squarely, that “(djamage is an essential element of the tort” of abuse of process. Morochnick v. Quigley, 17 Mass.App.Ct. 1035, 1036 (rescript), rev. den., 392 Mass. 1102 (1984), also holds that “actual damage is a necessary element of a claim of intentional interference with an advantageous business relationship” in the Commonwealth of Massachusetts.
To be sure, there is a suggestion both in Morochnick and, for purposes of c. 93A, in Jet Line Services, Inc. v. American Employers Insurance Co., 404 Mass. 706, 718 (1989), that nominal damages or attorneys fees may be recoverable if there are actual damages but those damages are not quantifiable. Whether there were unquantifiable actual damages in this case, however, was a question of fact for the jury. No special question concerning unquantifiable damages was submitted to the jury. The counterclaimants therefore have waived their right to contend they incurred unquantifiable damages. Walsh v. Chestnut Hill Bank & Trust Co., 414 Mass. 283, 289 (1993).
IV.Motion of GLX for Treble Damages
Because I have ordered a new trial on GLX’s damages, it might seem at first blush that I should take no action on GLX’s claim for treble damages for violation of G.L.c. 93A. I am persuaded, however, that the motion is ripe for decision now. By finding that plaintiffs unfair or deceptive practice was knowing or willful, the jury has established GLX’s entitlement to enhanced damages of some variety. I have not ordered a new trial on the “knowing or willful issue” and thus that portion of the jury’s determination is final.
The question whether damages should be doubled or trebled turns not on the amount of damage GLX incurred but on the type and nature of the conduct that engendered liability. That, too, has been established in final form by the completed trial for I have not ordered a new trial on the question of liability.
There is no impediment, therefore, to deciding now whether damages should be doubled or trebled.[7] In my view, double damages are a sufficient penalty for the kind of conduct the jury found plaintiff to have undertaken. That conduct, while knowingly unfair and deceptive, did not amount to the most egregious form of anticompetitive behavior, e.g., price fixing or theft of corporate secrets, for which treble damages ought to be reserved.
V.Motion of Dalpe, Lucia and GLX for Attorneys Fees
The motion is DENIED with prejudice as to Dalpe and Lucia but without prejudice as to GLX. Dalpe and Lucia suffered no damages as a consequence of GLX’s unfairness as to deceptive practice, consequently they cannot recover attorneys fees. Jet Line Services, Inc. v. American Employers Insurance Co., 404 Mass. 706, 718 (1989). I have vacated the damage award in favor of GLX and thus the motion for attorneys fees is denied without prejudice.
VI.Motion of GLX for Costs Pursuant to G.L.c. 93A, §11
The motion is denied without prejudice to renewal upon completion of the retrial.
VII.Motion of GLX to Substitute Plaintiff
The motion is allowed by agreement and Sun Chemical Corp. is substituted for Opti-Copy, Inc. as the plaintiff and defendant in counterclaim in this action.
VIII.Motion of GLX to Enjoin Sale of Assets
The motion is DENIED. I have ordered a new trial on damages because of my view that justice was not done in the damage award. On this record, I am not persuaded that GLX will suffer irreparable harm unless an injunction enters. I decline, therefore, to enter such an injunction.
IX.Motion of GLX to Add Polychrome Systems, Inc. as a Party Plaintiff
The motion is denied in view of the agreed-upon motion to substitute Chemical Corporation as the party plaintiff.
ORDER
In light of and to summarize the foregoing, it is hereby ORDERED that:
1. Plaintiffs Motion for Judgment N.O.V. or for a New Trial (Paper No. 36) is ALLOWED insofar as it seeks a new trial on the damage caused by plaintiffs abuse of process and is otherwise DENIED.
2. Plaintiffs Motion to Alter or Amend the Judgment (Paper No. 35) is DENIED.
3. GLX’s Motion for Treble Damages (Paper No. 50) is ALLOWED to the extent of ordering double damages and is otherwise DENIED.
4. The Motion for Attorneys Fees (Paper No. 46) is DENIED with prejudice as to Dalpe and Lucia and without prejudice as to GLX.
5. GLX’s Motion for Costs (Paper No. 43) is DENIED without prejudice.
6. GLX’s Motion to Substitute Plaintiff is ALLOWED by agreement.
7. GLX’s Motion to Enjoin Sale of Assets (Paper No. 39) is DENIED.
*601 8. GLX’s Motion to Add Party Plaintiff (Paper No. 40) is DENIED as moot.

 The questions whether defendants violated G.L.c. 93A and, if so, whether their violations were knowing and willful were submitted to the jury. See generally Commonwealth v. Elm Medical Laboratories, 33 Mass.App.Ct. 71, 73 (1992). The question whether damages warranted by an affirmative answer to those questions should be doubled or tripled was reserved for the court.

 Evidence about the anticipated dollar amount of profit from this sale was excluded at trial.

 The mere fact that profit projections were not reached does not, of course, permit the jury to infer that the shortfall was due to the wrongdoing of some tortfeasor. Instead
[GLX] had to prove that [it] sustained monetary losses due to the defendants’ wrongdoing ... It was not sufficient simply to show [GLX’s] projection of its sales and the historic return on total sales ... Many factors bear on the financial performance of a company. [GLX] had to show the portion of [GLX's] losses, at least in general terms, that was attributable to the [plaintiffs] misconduct. . . Damages for lost profits are recoverable only when proof is made “with sufficient certainly.” . . .
Augat, Inc. v. Aegis, Inc., 417 Mass. 484, 488 (1994).

 Counsel did so because of his desire to use information the plan contained in cross-examination of a potential witness on matters other than GLX’s ability to meet profit projections.

 Beyond that, neither the evidence presented at trial nor the evidence presented during the course of the voir dire provided a sufficient foundation to admit the profit projections even if fair notice of their potential use had been given.

 A remittitur is inappropriate because I am not ordering a new trial solely on grounds of an excessive verdict. See Mass.R.Civ.P. 59(a). Instead, I am ordering a new trial in large part because the evidence introduced on the damage issue tainted the process and yielded a verdict of undeterminable integrity.

 In fact, the circuit system in effect in the Superior Court makes it unlikely that the damage phase of the proceedings will be retried before me. There is, therefore, no practical reason to wait to make the required determination.