Botsford, J.
The plaintiff in this case, Synergy Communications, Inc. (Synergy), prevailed at a juiy trial on its claim that Citizens Bank (Citizens) negligently misrepresented information about certain funds in Synergy’s account. Synergy’s claim under G.L.c. 93A, §11, was reserved for the court and not given to the jury. Following the juiy trial, the parties presented memoranda and arguments on the c. 93A claim, which they agree is to be decided on the basis of the juiy trial evidence. Set forth below are my findings of fact and a discussion of the legal issues raised.
Findings of Fact[2]
Synergy is a veiy small company in the business of selling wireless telephones to individuals and small business customers. In November 1999, Synergy opened a business checking account (referred to as the “operating account”) with Citizens at the Citizens Chelsea office, and also obtained a $10,000 commercial loan from Citizens. In June 2001, Synergy opened a second business account at Citizens (referred to as the “wire transfer account”).
During the summer of 2001, Synergy negotiated a sale of wireless phones to persons purporting to be an entity in Uganda by the name of Jasa Campbell; the agreement was that Synergy would ship 200 telephones to Jasa Campbell for the price of approximately $74,400. Synergy requested that the persons purporting to be the entity Jasa Campbell wire-transfer these funds to Synergy’s wire transfer account at Citizens.
In August 2001, Citizens received through the mail a check dated August 3, 2001, payable to Synergy and in the amount of £51,458.40 (English pounds), purportedly issued by Conrad International and drawn on the London office of CitiBank N.A. Citizens does not know how or where the check was first received, but the check was delivered to Citizens’ international de *198 partment on August 15, 2001.[3] The check was not endorsed and did not identify any Synergy account number. Rebecca Hull, a Citizens employee working in the international department, credited the check to Synergy’s operating account after determining the U.S. dollar value of the check based on that day’s exchange rate and preparing a credit memo. She then sent the check for collection and payment to Bank of Nova Scotia, the clearing bank used by Citizens for processing international checks. The U.S. dollar value of the check that was credited to Synergy’s operating account was $72,603.80. Citizens’ banking procedures for foreign checks provide that the person recording the check should place a five-day hold for the U.S. dollar value on the customer’s deposit account, and note “foreign check” in the description field on the computer screen. (Ex. 41.) Hull did not put the hold on the check, or note “foreign check” in the description field. The procedures also call upon Citizens to inform the customer that the check is subject to final payment, and if returned unpaid the customer may be subject to a gain or a loss (depending on fluctuations in the currency rates). (Id.) Hull did not inform Synergy of these facts.
Upon reviewing an on-line account statement for the Synergy operating account on or about August 15, 2001, Termini noted the deposit of $72,603.80; these funds appeared as “available,” that is, not subject to any hold. There was nothing to indicate the deposit was a wire transfer, but Synergy was not expecting any deposit of a sum anywhere near this amount from anyone but Jasa Campbell. To make sure that this was indeed the wire transfer from Jasa Campbell, Termini went to the Citizens Chelsea office and spoke to Hugh Archbald. Archbald at the time held the position of banker or personal banker at the Chelsea branch' office.[4] He and Termini had dealt with each other before in relation to Synergy, and were on very good terms. Termini asked Archbald whether the $72,603.80 credit in the operating account represented wired funds. Archbald went to the Citizens computer on his desk, looked up the Synergy operating account and transactions relating to it, and told Termini that they were wired funds.[5] Termini then asked whether the credit was irrevocable — that is, whether the funds could not be charged back by Citizens; Archbald told Termini that the funds were “safe.”[6]
The information that Archbald conveyed to Termini about the funds was false. There is no evidence that Archbald knowingly or intentionally conveyed false information, and, obviously, I do not so find. Citizens’ computer information about the Synergy operating account should have reflected that there was a five-day hold on the $72,603.80 deposit — in other words, that it was not immediately available for use and should have also indicated that the deposit was from a foreign funds check. As indicated above, however, the employee in the international department had not put this information into the computer, and thus Archbald would not have learned it from his computer screen. It is the case, however, that the $72,603.80 deposit reflected in the Synergy operating account on the Citizens’ computer was accompanied by a credit memo. Archbald testified that if a bank employee cannot tell from the computer entry the origin or nature of the credit memo, a telephone call to the appropriate department will provide the necessary information. Archbald made no telephone call concerning the Synergy operating account in order to understand the meaning of the credit memo, and did not learn that the source of the $72,603.80 deposit was a foreign funds check. As a result, he misrepresented to Termini that the deposit was a wire transfer. The misrepresentation was negligent.
Thereafter, and in reliance on the information that the $72,603.80 credit represented “safe” wired funds, Synergy (through Termini) purchased the wireless telephones for the Jasa Campbell transaction from a wholesaler, at a cost of $52,749.42. Synergy also paid $1,132 to an international shipping specialist, and a commission to its salesman in the amount of $6,533. The total of these costs was $60,414.42. The telephones were sent on their way to Uganda on September 14, 2001.
It turned out that the check received by Citizens and deposited in the Synergy operating account had been fraudulently altered, and it was dishonored. In response to the dishonor; on or about September 20, 2001, Citizens charged back Synergy’s operating account in the amount of $76,136.47. The chargeback was for $3,532.57 more than the amount of the initial credit for the check because of a change in the value of the U.S. dollar against the British pound between August 15 and September 20, 2001. Moreover, since Synergy had disbursed most of the funds previously credited to the operating account, the chargeback caused the account to be overdrawn. The Bank charged Synergy overdraft and insufficient funds fees in the amount of $334.
If Archbald or any representative of Citizens had told Termini on August 15, 2001 that the credit memo associated with the $72,603.80 deposit was because of a foreign funds check, Synergy would not have spent any of the money.
Discussion
As indicated by the above findings, I conclude that Hugh Archbald, Citizens’ employee, did negligently misrepresent that the deposit appearing in the Synergy operating account was of wired funds, and that in substance, they were not subject to chargeback by Citizens (i.e., the credit was more than provisional). See, e.g., Nota Consi. Corp. v. Keyes Assocs., Inc., 45 Mass.App.Ct. 15, 19-20 (1998);[7] Fox v. F&J Gattozzi Corp., 41 Mass.App.Ct. 581, 587-88 (1996) (same). The question is whether this misrepresentation qual *199 ifies as unfair or deceptive conduct under G.L.c. 93A, §11.
The answer is no. A negligent misrepresentation of fact may certainly give rise to liability under c. 93A. See, e.g., Golber v. BayBank Valley Trust Co., 46 Mass.App.Ct. 256, 261 (1999). See also Nota Const. Corp. v. Keyes Assocs., Inc., supra, 45 Mass.App.Ct. at 21 (where summary judgment should not have been allowed on plaintiffs negligent misrepresentation claim, plaintiffs c. 93A claim remains viable as well). But the statutory liability does not follow automatically. See Walsh v. Chestnut Hill Bank & Trust Co., 414 Mass. 283, 288-89 (1993). Consideration of the particular facts and circumstances is important.
In cases where the courts have found liability under c. 93A for negligent misrepresentations, the facts indicated a series of misrepresentations over a period of time, or at least more than a single response to a single inquiry. See Golber v. BayBank Valley Trust Co., supra, 46 Mass.App.Ct. at 259-60; Glickman v. Brown, 21 Mass.App.Ct. 229, 230-33 (1985). Moreover, these cases also reveal that the misrepresentations, although determined to be negligent and not intentional, were made in circumstances where the defendant benefitted from the plaintiffs reliance on the erroneous statements, and, one may infer, would have known of the benefit at the time the misrepresentations were made. Golber, 46 Mass.App.Ct. at 259-60; Glickman, 21 Mass.App.Ct. at 231-33.
This case is different. There is no question that when Termini asked whether the $72,603.80 deposit appearing in the Synergy account reflected a wire fund transfer, Archbald could have taken steps to discover the deposit’s status — was it a wire transfer, a check, or something else — by picking up the telephone to find out what the credit memo associated with the transaction signified. He did not do so. However, the record contains no evidence that Archbald or any Citizens employee repeated the misrepresentation about the nature of the deposit to Synergy, and, as Citizens points out, absolutely no evidence suggesting that the misrepresentation benefitted Citizens in any way.
Archbald’s response to Termini was improvident— negligent — but nothing more. I conclude that it was neither deceptive nor unfair within the meaning of G.L.c. 93A, §§2 and 11. See Walsh v. Chestnut Hill Bank & Trust Co., supra, 414 Mass. at 284, 287-88.[8] Cf. Framingham Auto Sales, Inc. v. Workers Credit Union, 41 Mass.App.Ct. 416, 418 (1996) (where bank dishonored cashier’s check in violation of Uniform Commercial Code obligations, but there was no evidence of ulterior motive, or of coercive or extortionate behavior, plaintiffs claim of violation of c. 93A, §11, was correctly dismissed: “a mere breach of a legal obligation under commercial law, without more, does not amount to an unfair or deceptive act under G.L.c. 93A”). Cf. also Atkinson v. Rosenthal, 33 Mass.App.Ct. 219, 225-26 (1992).
It follows from this conclusion that judgment should enter in favor of Citizens on its claim under G.L.c. 93A, and that accordingly, there is no basis to award attorneys fees to Synergy.[9] Synergy prevailed on its common-law claim of negligent misrepresentation, and is entitled to recover its reliance damages connected with the misrepresentation. On this point, I add a final observation. The damages awarded by the juiy on Synergy’s common-law claim of negligent misrepresentation were $46,441. As Synergy argues, there appears to be no evidentiary basis on which the jury could have relied in arriving at this figure. It does not even cover, for example, the unchallenged cost of the telephones that Synergy purchased and the related shipping charges. After judgment enters in this case, Synergy is free to file a motion under Mass.R.Civ.P. 59 to raise this issue.
ORDER
For the foregoing reasons, a final judgment is to enter in this case as follows: in favor of the plaintiff Synergy Communications Inc. on Count VI of the amended complaint in the amount of $46,441.00, plus interest and costs; and in favor of the defendant Citizens Bank on Counts I through V and VII through IX. It is further ordered that judgment enter in favor of the defendants-in-counterclaim, Synergy Communications, Inc. and Rudy Termini, on Counts I, II and III of Citizens Bank’s counterclaim.

As will be obvious to the parties, many of the findings recited below are taken verbatim from the agreed facts introduced as an exhibit at trial (ex. 36). They are included here for background and context.

It is undisputed that neither Synergy nor Termini ever had possession of the check before it was received through the mail by the bank.

At the time of trial, Archbald was the assistant branch manager at the Citizens Chelsea office.

I make this finding based on Termini’s testimony, but I note there was evidence from which one could find otherwise. Archbald himself did not remember the details of his conversation with Termini, but it appears undisputed that at all relevant times the Citizens computerized account tracking system specifically identified wired fund transfers with the designation “wire xfer.” (See ex. 88.) No one contends here that the computerized Synergy operating account statement reflecting the $72,603.80 deposit had any “wire xfer” designation associated with it. Archbald testified that his practice was to tell a customer that a deposit or transfer was a wire transfer if the computer account statement so indicated. One might conclude on the basis of Archbald’s testimony that he did not tell Termini the deposit was a wire transfer because the signs of such a transfer were not present. Nonetheless, the jury credited Termini’s version of his conversation with Archbald, and I do as well.

Termini only directed questions about the nature and identity of the deposit funds to Archbald and Citizens. He never made any inquiry of the persons purporting to be the entity Jasa Campbell as to why they had not sent the funds into the wire transfer account, as Synergy had directed, or why the amount of the transfer was less than the agreed-upon sum.

“In order to recover for negligent misrepresentation a plaintiff must prove that the defendant (1) in the course of his business, (2) supplies false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information.” Nota Const. Corp. v. Keyes Associates, Inc., 45 Mass.App.Ct. 15, 20-21 (1998) (citations omitted).

In the Walsh case, the plaintiff was a partner in a two-partner real estate project. The partnership obtained a line of credit from the defendant bank. In connection with this loan, the bank obtained mortgages on separate properties individually owned by the plaintiff and her partner. Before the loan closed, the bank informed the plaintiff that it held the first mortgages on her partner’s New Hampshire properties (presumably as an incentive or reassurance to the plaintiff to proceed with the loan transaction), but before the loan closed, the bank learned that the mortgage it held on one of the New Hampshire properties was only a second mortgage. The bank did not inform the plaintiff of the new information about the second mortgage, and the loan transaction was completed. The plaintiff brought claims, inter alia, of misrepresentation against the bank and sought to add a c. 93A count to the complaint soon before trial. The trial judge denied the motion. At trial, the jury found that the bank had negligently made false statements of material fact to the plaintiff, based on the evidence of the nondisclosure of the second mortgage status. The trial judge denied the motion to amend to add c. 93A count, but also reviewed the count on the merits, based on the evidence presented at trial. He concluded the bank’s conduct was neither unfair nor deceitful. Walsh v. Chestnut Hill Bank & Trust Co., 414 Mass. 283, 284 (1993); the Supreme Judicial Court upheld this determination, rejecting the plaintiffs claim that the judge’s finding of no deceptive conduct under c. 93A was clearly erroneous in light of the jury’s finding of negligent misrepresentation. Id. at 287-88.

In its memorandum on its c. 93A count (Count IX of the amended complaint), Synergy adds a proposed finding and conclusion concerning a different count, Count I. In that connection, Synergy asserts that Citizens is estopped from charging back to its account the dishonored check at the heart of this case. The grounds for estoppel are stated to be the misrepresentation of Archbald. This argument deserves rejection. Synergy never made a claim at trial that it was entitled, on grounds of estoppel or otherwise, to reverse the chargeback to its account, as opposed to recovering its reliance damages associated with the misrepresentation. In addition, Synergy did not ultimately press its claim that Citizens’ dishonor of the check was untimely. Finally, the argument that general principles of estoppel should operate in this case to prevent the chargeback do not appear supported by the Uniform Commercial Code or Massachusetts law.