Feeley, Timothy Q., J.
This wrongful death automobile negligence case commenced trial on September 17, 2008. Evidence concluded at the end of the first trial day. The next day, after closings and charge, the jury took the case by mid-morning. They deliberated until 4:40 pm, before adjourning until the following day. A verdict for plaintiffs was returned at 2:15 p.m. on the third day of trial. The jury found defendant Michael Maldonado negligent in the operation of his motor vehicle, and that his negligence was a substantial contributing cause of the death of Lillian Wendorff whose daughters, as administratrixs of her estate, are plaintiffs in this action. In response to special questions concerning damages, the jury awarded $10,522.59 for medical expenses of Lillian Wendorff. The juiy answered “zero” to the damage questions about compensation for funeral expenses, and the value of the loss of Lillian Wendorffs care, comfort, support and companionship to each of her plaintiff daughters.
Plaintiffs move for a new trial limited to damages under Mass.R.Civ.P. 59(a). Initially, and in accordance with that rule, they seek to invoke the “additur” procedure, requesting this court to give the defendant an opportunity to accept an addition to the verdict, in lieu of the allowance of their new trial motion. For reasons discussed below, this court ALLOWS IN PART plaintiffs’ request for an additur, but DENIES their motion for new trial.

BACKGROUND

Lillian Wendorff (“Lillian”) was an active 88 years old when she was tragically struck and killed by the vehicle driven by Michael Maldonado (“Michael”) at 6:15 p.m. on December 22, 2004. Lillian had apparently just gotten off a city bus and was crossing the street in a crosswalk when she was struck by Michael’s vehicle. She died from her injuries later that night at *30 a local hospital. At the time of the accident, Michael was heading home from work on the same street he took every day. He credibly testified, with no evidence to the contrary, that he was driving well below the speed limit and never saw Lillian before feeling the impact of hitting her. He immediately stopped his car and called for emergency assistance.
Michael’s defense at trial was that Lillian’s death was a pure accident, that it was dark and she was wearing dark clothing, and he had been attentive, driving slowly and carefully, and simply failed to see her before his vehicle struck her. Plaintiffs stressed the location of the accident, that Lillian was about fifteen feet into the crosswalk at the time of the accident. The court gave an instruction about Massachusetts law requiring drivers to yield to pedestrians in crosswalks, and that a violation of such a law, if found by the jury, could be considered as evidence of Michael’s negligence.
Both plaintiffs testified about close and regular contact with their mother. Documents establishing medical expenses for Lillian in the amount of $10,522.59 and funeral expenses in the amount of $10,115.25 were introduced into evidence by agreement of the parties. The court refused to instruct, over plaintiffs’ objection, on damages for pain and suffering. The evidence, in the court’s view, did not permit a fair inference that Lillian had been conscious after impact with Michael’s vehicle. The court also refused to instruct, over plaintiffs’ objection, on punitive damages based on gross negligence and/or reckless, willful, wanton, or malicious conduct. The evidence, in the court’s view, would not permit a reasonable jury to find the type of conduct necessary to establish a right to punitive damages.
In addition to plaintiffs’ motion for additur/new trial Michael has filed two motions for credits against the jury award. Pursuant to G.L.c. 231, §140B, he asks this court to give him a credit against the jury verdict in the amount of $25,000, the amount previously paid to plaintiffs on his behalf by his insurance company. Pursuant to G.L.c. 90, §34M, he asks for an order reducing the jury verdict in the amount of $8,000, the amount of personal injury protection benefits available to plaintiffs for the injuries and death of Lillian. The court will grant each of those motions.

DISCUSSION

Mass.R.Civ.P. 59(a) provides in pertinent part: “A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted ...” Granting or denying a motion for new trial on the ground that the verdict is against the weight of the evidence rests in the discretion of the judge. Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 536 (1989). More specifically for purposes of this case, “motions for a new trial on the theory that the damages were inadequate or excessive ought not be granted unless on a survey of the whole case it appears to the judicial conscience and judgment that otherwise a miscarriage of justice will result.” Walsh v. Chestnut Hill Bank and Trust Company, 414 Mass. 283, 292 (1993) (quoting Bartley v Phillips, 317 Mass. 35, 41 (1944)). “[A] judge should exercise this discretion only when the verdict is so greatly against the weight of the evidence as to induce in his mind the strong belief that it was not due to a careful consideration of the evidence, but that it was the product of bias, misapprehension or prejudice.” Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 127 (1992) (quouting Scannell v. Boston Elevated Ry., 208 Mass. 513, 514 (1911)).
Michael, in opposing plaintiffs’ motion for new trial has conceded that an additur in the amount of funeral expenses, that is, $10,115.25, should be granted. Given Michael’s position, it is not necessary that the court grant the new trial motion, conditioned upon agreement to the additur. With Michael’s agreement on the record, the court will order that judgment enter in plaintiffs’ favor in the amount of the combined total of medical and funeral expenses, that is, $20,637.84, with interest and costs as allowed by law.
Given the adjustment to the verdict made above, the court cannot say that a miscarriage of justice will result if plaintiffs’ new trial motion is not granted. In this case, after hearing all of the evidence, and seeing all parties in court and on the witness stand, this court is not left with an firm conviction that a miscarriage of justice results from the adjusted verdict of the jury, which deliberated for a longer period of time than was taken by the presentation of evidence. It was clear to the court at the time of the instructions to the juiy, that a large damage award would not be returned, even if negligence was found. Lillian was 88 years old at the time of her death and one of her daughters testified that Lillian had been diagnosed with cancer and had elected not to undergo treatment. There was no claim for lost earning capacity. Additionally, the court ruled that the jury could not consider damages for pain and suffering, or punitive damages.
The jury was instructed in pertinent part on damages as follows:
There is no special formula under the law to assess the plaintiffs’ damages. It is your obligation to assess what is fair, adequate, and just. You must use your wisdom and judgment and your sense of basic justice to translate into dollars and cents the amount which will fully, fairly and reasonably compensate the next of kin, in this case her daughters, for the death of Lillian Wendorff. You must be guided by your common sense and your conscience on the evidence of the case.
In determining the amount of damages which the plaintiffs are entitled to recover, there are certain areas you should take into consideration

*31
Fair Monetary Value of the Decedent to the Beneficiaries

Under the wrongful death statute, Phyllis Wendorff and Naomi Orlando are entitled to recover the fair monetary value of the decedent to them, including, but not limited to, the loss of reasonably expected “net income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent.” You shall not award damages for grief, anguish, and bereavement.
The court does not necessarily view its instructions as having been disregarded. Being instructed that they should take into account certain expenses, is not necessarily an instruction that they must impose a monetary amount, particularly with respect to unliq-uidated damages.
Any award to plaintiffs for their personal losses would be to some extent speculative, as there is no ready measure for those types of damages. Although the court would certainly uphold a significant damage award to plaintiffs if imposed by the jury, the court views the jury’s determination that no compensation should be awarded for the personal losses of plaintiffs to be within the broad range of the jury’s discretion. The court is hesitant to, and will not, substitute its judgment on that issue for that of the jury in this case. Lillian lived separately from her daughters and did not provide income, services, protection, care, or assistance to her daughters. She did provide society, companionship, and motherly love, but those aspects of her relationships with her daughters are difficult to translate into a monetary value. The jury apparently decided that they could not place a monetary value on plaintiffs’ personal losses, and the court cannot say a miscarriage of justice resulted.[1] Lillian was in her late eighties, lived separately from her daughters, and was suffering from cancer for which she was electing to forego treatment. The court itself, recognizing and acknowledging plaintiffs’ deep and terrible loss, would be hard pressed to translate their losses into a monetary award. The jury was instructed: “It is your obligation to assess what is fair, adequate, and just. You must use your wisdom and judgment and your sense of basic justice to translate into dollars and cents the amount which will fully, fairly and reasonably compensate the next of kin, in this case her daughters, for the death of Lillian Wendorff. You must be guided by your common sense and your conscience on the evidence of the case.” The court has no doubt that the jury’s verdict was the result of thoughtful deliberations. From the court’s own observations, the jury worked hard, and long (about eleven hours), and gave no indications that their verdict was the result of impermissible compromise. See Simmons v. Fish, 210 Mass. 563, 571 (1912). There was no sign of dissension among the jurors on the four occasions during deliberations, including the return of the verdict, when they were in the court’s presence. The court cannot say that the jury’s failure to translate into dollars and cents the personal losses of plaintiffs was the result of an impermissible refusal to carefully consider the issue.

ORDER

For the reasons stated above, plaintiffs motion for an additur is ALLOWED IN PART, and their motion for a new trial is DENIED. Judgment shall enter in plaintiffs’ favor in the amount of $20,637.84, plus interest and costs as allowed by law.

The court does not view the jury’s verdict as a statement that Lillian’s life was worth nothing to her daughters, or her daughters lost nothing with her tragic death. The jury heard credible and compelling testimony from plaintiffs about their close relationships with their mother. Rather, the court concludes that the jury was merely unable to quantify that loss into a monetary award.