# United States Court of Appeals
## For the First Circuit

No. 02-1066

DEVINE & DEVINE FOOD BROKERS, INC.,

Plaintiff, Appellant,

v.

WAMPLER FOODS, INC. and CUDDY FARMS, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella and Howard, Circuit Judges.

Louis Cassis, with whom Cassis, Arena & Cayer was on brief,
for appellant.
Joseph D. Steinfield, with whom Alexander W. Moore, C. Dylan
Sanders and Hill & Barlow were on brief, for appellee.

December 17, 2002

**HOWARD**, **Circuit Judge**. Devine & Devine Food Brokers ("Devine"), a Massachusetts food broker, appeals the district court's refusal to impute to Wampler Foods, Inc. ("Wampler"), a Virginia poultry manufacturer, a contractual obligation to pay Devine a substantial severance penalty. Devine contends that Wampler assumed this obligation when Wampler purchased a corporate division from Cuddy Farms, Inc. ("Cuddy"), the entity with whom Devine had negotiated the severance provision. We see no basis for holding Wampler liable for the penalty and accordingly affirm.

## I. Background

The genesis of this dispute can be traced to 1987, when Devine and Cuddy entered into a written food brokerage agreement ("the Agreement") that memorialized an oral contract under which the parties had operated since 1984. The parties subsequently added an amendment to the Agreement, providing for a substantial severance payment to Devine should Cuddy choose to terminate the Agreement. By its terms, North Carolina law governed the Agreement.

By August 1994, Wampler and Cuddy had consummated an Asset Purchase Agreement ("APA") whereby Wampler acquired a substantial portion of Cuddy's food division in exchange for cash and newly issued shares of Wampler stock.[1] Virginia law governed

_____

[1] At that time, Cuddy reorganized itself into two divisions: the farm division and the food division. Cuddy retained the farm division. Wampler paid approximately $72 million for Cuddy's food

-2-

the APA.  The APA specified the Cuddy liabilities Wampler would assume with its purchase.  The liabilities arising out of the 1987 Cuddy-Devine agreement were not specified.

After the transaction was completed and after an initial shuffling among brokers, Wampler selected Devine to represent the Wampler and Cuddy brands in New England.  Wampler notified Devine by letter that they were entering into a new agreement, which "superceded" any existing contracts with Cuddy.

In due course, Wampler representatives met with Devine executives, including Joseph and Steven Devine.  At this meeting, Devine took the position that Wampler had assumed Cuddy's responsibilities under the Cuddy-Devine severance provision. Wampler, however, was adamant that its purchase of Cuddy's assets did not obligate it to Devine under the Agreement.  On this issue, the parties reached a "stand off" and agreed to disagree.

On January 4, 1995, Wampler sent a letter to Devine expanding its area of coverage.  The letter reiterated that "[t]his document will serve as your only brokerage agreement and supercedes any and all previous agreements or contracts with either Wampler [] or Cuddy Farms."  Under the arrangement described in the letter, Wampler compensated Devine according to its own payment schedules.

_____

division -- $42,500,000 in cash and $30,800,000 in newly issued shares of Wampler stock, representing a 10% stock interest in Wampler.

In the years following, Wampler assigned to Devine new accounts without reference to the Cuddy termination provision. In 1997, it consolidated the Wampler and Cuddy brands pursuant to a new appointment letter. The letter contained no severance payment provision, and Devine did not seek to include such a provision upon receipt of the letter.

On May 18, 1998, Wampler terminated Devine's brokerage appointment. Approximately one month later, Wampler notified Devine by letter of its termination and offered Devine an "additional lump sum payment of $50,000."

Eventually, Devine filed this diversity action against Cuddy and Wampler, alleging breach of contract and unfair trade practices in violation of Mass. Gen. Laws ch. 93A, and seeking from Wampler and Cuddy the amount due under the severance provision of the Cuddy-Devine contract. Subsequently, the district court allowed Cuddy's motion to dismiss on statute of limitations grounds and Wampler's motion for summary judgment on the ground that Wampler was not liable to Devine under the severance provision. Devine appeals only the court's award of summary judgment to Wampler.

## II. Breach of Contract

Under generally accepted corporate law principles, the purchaser of the assets of another corporation does not assume the debts and liabilities of the transferor. The traditional rule is subject to four generally recognized exceptions: (1) the purchasing

corporation expressly or impliedly agrees to assume the selling corporation's liabilities; (2) the transaction is a merger of the two entities; (3) the purchaser is a mere continuation of the seller corporation; and (4) the transaction is a fraudulent attempt to evade the seller's liabilities. Dayton v. Peck, Stow, & Wilcox Co., 739 F.2d 690, 692 (1st Cir. 1984); 15 W. Fletcher, Law of Private Corporations §§ 7122, at 227-243 (1999).

Invoking the first of these four principles Devine contends that Wampler assumed Cuddy's liabilities under the severance provision by means of an implied contract between Wampler and Cuddy. To sufficiently persuade us on that score, Devine must demonstrate that, as with an express contract claim, Wampler manifested its assent to assume the Cuddy-Devine contract. 1 Corbin on Contracts, § 1.19, at 55 (Rev. Ed. 1993); LiDonni, Inc. v. Hart., 355 Mass. 580, 583 (1969). A prima facie case of implied assumption of contract is established where a corporation accepted the benefits of a contract with knowledge of its terms. See Framingham Sav. Bank v. Szabo, 617 F.2d 897, 900 (1st Cir. 1980) (applying Massachusetts law).

The record before us does not permit such a finding. On several occasions, Wampler explicitly informed Devine that the Cuddy contract was superceded. Wampler's notice of the Cuddy-Devine contract was not an effort to stand in the shoes of Cuddy and assume Cuddy's liabilities in toto, but an arrant warning to the contrary.

It is of no moment that the Cuddy-Devine contract was still in effect during the parties' business dealings; Wampler was neither a party to that contract nor did it indicate to Devine an intent to assume the Cuddy contract wholesale.

To be sure, Wampler adopted many of the contract's terms in appointing Devine as its New England broker. But Devine points to no evidence suggesting that, concomitant with Wampler's designation of Devine as its broker, Wampler acquiesced in all of the provisions of the Cuddy agreement. Even though Wampler earnestly wanted to secure Devine's services, Devine's refusal to acknowledge that its arrangement with Wampler contained no severance penalty is simply insufficient to create such a provision. 1 Corbin on Contracts, § 2.8, at 133-34 (1993); see also Meehan v. Shaughnessy, 404 Mass. 419, 445 n. 22 (1989). We see no basis in this case to create by operation of law contract terms that the parties failed to secure through negotiation.

Devine also posits that the APA brought about a de facto merger between Wampler and Cuddy, rendering Wampler responsible for Cuddy's liabilities. E.g., Kaiser Found. Health Plan v. Clary & Moore, P.C., 123 F.3d 201, 205 (4th Cir. 1997); Crawford Harbor Assocs. v. Blake Constr. Co., 661 F.Supp. 880, 885 (E.D. Va. 1987). Under Virginia law, no one factor is dispositive in determining whether an asset purchase transaction is in fact a merger. Instead, courts have identified four factors that serve as useful analytical

guideposts: 1) continuity of enterprise, 2) common identity of the management and shareholders in the purchasing entity; 3) termination of the normal operations of selling corporation; and 4) assumption by the purchaser of the seller's obligations necessary for the continuation of the seller's routine business operations.[2] Id. While not dispositive, the factor that typically tips the scales in favor of finding a merger is continuity of ownership, usually taking the form of an exchange of stock for assets. Crawford Harbor, 661 F.Supp. at 884.

The evidence here does not support Devine's de facto merger argument. Although Cuddy acquired a 10% stock interest in Wampler and retained some of Cuddy's managers and clients, Devine emphasizes form over substance in suggesting that these factors render the transaction a merger when all other circumstances support a contrary conclusion. There was neither a wholesale continuity of management or ownership nor a liquidation of the selling corporation. Indeed, Cuddy survived the merger and continues to do business today. There is no allegation that the transaction was a mere ruse to avoid the

---

[2] Although the record does not disclose that the district court made a formal choice-of-law determination, the parties have addressed the implied contract claim under Massachusetts law and the merger claim with resort to the law of Virginia. Where the significant events occurred in Massachusetts, and the APA by its terms was to be governed by Virginia law, we have no occasion to challenge these choice-of-law determinations. See, e.g., Fisher v. Trainor, 242 F.3d 24, 29 n.2 (1st Cir. 2001); New Ponce Shopping Ctr. v. Integrand Assur. Co., 86 F.3d 265, 267 (1st Cir. 1996).

seller's liabilities.[3]  To find a _de_ _facto_ merger here would be to stretch the doctrine beyond its logical limits.

### III. **Unfair Trade Practices**

Devine's final claim of error is that the district court should not have entered summary judgment on its unfair trade practices claim.  Here, the appellant has made no showing that Wampler's acts fall within "the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical or unscrupulous. . ." Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 27 (1997) (quoting PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975)(internal quotation marks omitted).  After scouring the record, we find nothing in Wampler's conduct that would give rise to an actionable claim under Chapter 93A.  It may be that Wampler wanted to have it both ways by securing Devine's services without the termination clause.  But Wampler was up front in expressing this desire.  It is not necessarily an unfair trade practice to get the better of the bargain.

### IV. **Conclusion**

For the reasons set forth above, we affirm the district court's award of summary judgment to Wampler on Devine's breach of contract and unfair trade practice claims.

---

[3]  A primary purpose of the _de_ _facto_ merger exception is to protect dissenting shareholders or creditors from a transaction that is a ploy to avoid the seller's liabilities.  15 W. Fletcher, Law of Private Corporations §§ 7045.10, at 32-34 (Rev. Ed. 199).  Courts commonly appeal to this doctrine where the asset transfer in question was neither an arms-length bargain nor supported by adequate consideration.  E.g., Crawford Harbor, 661 F.Supp. at 884.

**Affirmed.**  Costs to appellee.