Connon, Richard F., J.
The plaintiff, West Waters, (“the plaintiff’) brought this action against Earthlink, Inc. and OneMain.Com, Inc. (“the defendants”) alleging breach of contract and unfair and deceptive trade practices in violation of G.L.c. 93A. The defendants have moved for summary judgment on those claims. For the following reasons, that motion is ALLOWED.
BACKGROUND
The plaintiff and the defendants agree to the following facts. West Waters, the plaintiff,, purchased internet services in 1998 from Cape Internet, a local Internet Service Provider. For a monthly fee, the plaintiff received internet access, email, and web-hosting. He used the web-hosting services to support a website for his business, Codder’s House of Furniture. The plaintiff did not sign a written contract with Cape Internet. Cape Internet’s user agreements were posted on the Cape Internet site. The plaintiff asserts that his agreement with Cape Internet provided “unlimited” Internet access.
In September 1999, Cape Internet was purchased by OneMain.Com, one of the defendants in this action. At the time, Cape Internet had 18,000 customers. OneMain.Com operated Cape Internet by continuing to operate the existing email servers and web-hosting *220 servers located on Cape Cod. Between March and July 2000, OneMain removed Cape Internet user agreements from the web and in their place posted a copy of the OneMain agreement. The OneMain agreement included a “Warranty disclaimer” in paragraph 7 which provided that the services were provided in an “as is” condition and that OneMain made no warranties of any kind.
In September 2000, Earthlink, the other defendant in this action, acquired OneMain.Com and, through that acquisition, also acquired Cape Internet which was owned by OneMain.Com. Neither OneMain.Com nor Earthlink required the plaintiff to sign an agreement. Neither OneMain nor Earthlink utilized a “click-wrap” or “browse-wrap” agreement, with which a user would have to indicate his assent to the contract before proceeding. At all times, the plaintiff paid a flat monthly fee in exchange for email and web-hosting services.
While OneMain.Com had continued to operate the Cape Internet accounts on the Cape Internet servers, Earthlink decided to migrate those accounts to its own servers. Earthlink moved the former Cape Internet accounts, including that of the plaintiff, on October 23, 2000. This integration caused some problems for at least some customers. According to an internal Earthlink email, an error in moving email accounts between servers resulted in the change of approximately 2000 customers’ passwords and the change of another 2000 customers’ user IDs. Earthlink proactively contacted those customers and gave instructions to customer service representatives to help any customers who might call in. The former Cape Internet accounts also suffered because they received a high volume of spam. Earthlink was not able to control the spam problem in late 2000 and early 2001. Customers endured eight months of impairment of their email services.
On May 2, 2001, Earthlink sent a memorandum to former Cape Internet web-hosting customers giving them five weeks notice that their service would be terminated. Customers could download their former Cape Internet webpage and upload that information onto an Earthlink server. The plaintiff claims that he was unable to access the content in order to upload it onto an Earthlink server. The plaintiffs futon sales dropped 46% in 2001, a drop which he attributes to the difficulties he encountered with his web page.
DISCUSSION
This Court will allow a motion for summary judgment when there is no dispute of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P 56(c). Here, the defendants, who do not have the burden of proof at trial, have moved for summary judgment. “[A] parly moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “The burden on the moving party may be discharged by showing that there is an absence of evidence to support the non-moving party’s case.” Id. at 711. “To be successful, a moving party need not submit affirmative evidence to negate one or more elements of the other party’s claim.” Id. at 716. Here, the defendants are entitled to summary judgment if they show that the plaintiff cannot meet his burden at trial of proving an essential element of his case.
In looking at the facts, the Court construes any discrepancies in the light most favorable to the non-moving party. Conley v. Massachusetts Bay Transp. Authority, 405 Mass. 168, 173 (1989). However, “the non-moving party cannot create a material issue of fact and defeat summary judgment simply by submitting affidavits that contradict its previously sworn statements.” Ng Brothers Construction, Inc. v. Cranney, 436 Mass. 638, 648 (2002).
I. Contract Claims
The plaintiff claims that the defendants, OneMain and Earthlink, have contracted with him to provide “unlimited” internet access. In order to prove a case of breach of contract, a plaintiff must show “(1) an agreement was made between the plaintiffs and the defendant supported by valid consideration ... (2) the plaintiffs have been ready, willing, and able to perform; (3) the defendant’s breach has prevented them from performing . . . and (4) the plaintiffs have suffered damage.” Singarella v. City of Boston, 342 Mass. 385, 387 (1961). Here, the plaintiff has failed to show that he has an agreement with the defendants.
The plaintiff, who has the burden of proof, has not submitted any evidence aside from his own testimony showing that he had a contract with Cape Internet, the original internet service provider with whom he contracted, for uninterrupted internet access. The plaintiff asserts that the access was promised to be “unlimited.” Courts in other jurisdictions have held that the term “unlimited” is not to be interpreted as a guarantee of access to the internet, but rather is to be interpreted as an indication that the customer is not being charged for the duration of the actual use. See Mathias v. America Online, Inc., No. 79427, 2002 WL 377159 (OhioCt.App. Feb. 28, 2002) (holding that the term “unlimited” does not mean “uninterrupted”). Here, the plaintiff has the burden of establishing that the contract he alleges provided for the guaranteed performance he claims. There is scant evidence in the record showing that the plaintiffs agreement with Cape Internet included the terms that he claims. The only evidence of this alleged agreement is the plaintiff s own testimony. Construing all evidence in favor of the plaintiff, plaintiffs testimony is sufficient at this sum *221 maiy judgment stage to keep alive the possibility that the plaintiff had a contract with Cape Internet.
Even if the plaintiff managed to establish, however, that he had a contract with Cape Internet that included the terms he claims, the plaintiff has failed to establish a contract with the defendants, OneMain and Earthlink. OneMain purchased Cape Internet. Purchasing a corporation does not automatically place the buyer corporation in the shoes of the original corporation in the contract setting. Devine & Devine Food Brokers, Inc. v. Wampler Foods, Inc., 313 F.3d 616 (1st Cir. 2002) (applying Massachusetts law to this issue). In Devine & Devine Food Brokers, Inc. v. Wampler Foods, Inc., the plaintiff had a contract with a corporation which had been purchased by the defendant corporation. That contract with the original corporation contained a severance provision. When Wampler purchased the original corporation, Wampler created a new contract with the plaintiff which did not contain this provision and actively notified the plaintiff several times that this contract change had occurred. Id. at 618. The Court held that the predecessor’s agreement was superseded by the buyer corporation’s contract:
To be sure, Wampler adopted many of the contract’s terms in appointing [the plaintiff] as its New England broker. But [the plaintiff] points to no evidence suggesting that, concomitant with Wampler’s designation of [the plaintiff] as its broker, Wampler acquiesced in all of the provisions of the [predecessor’s] agreement. Even though Wampler earnestly wanted to secure [plaintiffs] services, [plaintiffs] refusal to acknowledge that its arrangement with Wampler contained no severance penally is simply insufficient to create such a provision.
id="b329-6">id. at 619. Even when the plaintiff in that case did not assent to the terms of the new agreement, such lack of assent did not serve to continue the predecessor’s agreement, though it had the potential to void the new contract.
In the present case, the plaintiff alleged that he had a contract with Cape Internet which provided for a certain level of service. Even if he were able to prove that this contract existed and promised the level of service he asserts, that contract with the predecessor corporation, Cape Internet, is not binding on the buyer corporation, OneMain. It is undisputed that OneMain did not adopt the contract used by Cape Internet. It is undisputed that when OneMain purchased Cape Internet, it removed the old contract from the website and published a new one on that website. Earthlink made a similar change of contract when Earthlink purchased OneMain and its interest in Cape Internet.
The plaintiff argues that the new contract did not take effect because it was merely published on the website and not presented though a “click-wrap” format as has become the norm in the time since the events in this case occurred. A click-wrap agreement insures that a party clicks his agreement to a contract before proceeding to use certain electronic material. If the plaintiffs argument succeeded, the absence of a click-wrap agreement goes only to the formation of the new contract between the defendants and the plaintiff. The absence of a click-wrap agreement does not impact the fact that the original contract ended. Just as, in Devine & Devine Food Brokers, Inc. v. Wampler Foods, Inc., the plaintiffs unwillingness to assent to the new severance provision did not preserve the old severance provision from the contract with the predecessor corporation, so too here the lack of a manifestation of the plaintiffs assent to the new terms in the form of a click-wrap agreement does not serve to resurrect the agreement between the plaintiff and Cape Internet. The absence of a click-wrap agreement is a shield for the plaintiff against the possibility of OneMain enforcing provisions of the contract, not a sword to allow the plaintiff to enforce a predecessor’s contract against OneMain. The plaintiffs assent is relevant to the formation of the new contract not the dissolution of the old contract. Therefore, a showing that the plaintiff did not assent to the new contract is not the affirmative showing that the defendants adopted the Cape Internet contract, an essential element of the plaintiffs case.
II. 93A Claim
The complaint does not indicate whether the plaintiff claims relief in his personal capacity, under G.L.c. 93A, §9, or on behalf of his business, pursuant to G.L.c. 93A, §11. Because the plaintiff is an individual and his business is not a party, the claim can only be a claim under Section 9. The plaintiffs 93A claim fails because he has not sent the requisite demand letter pursuant to G.L.c. 93A, §9. See Simas v. House of Cabinets, Inc., 53 Mass.App.Ct. 131, 139 (2001) (setting forth requirements for an adequate demand letter under chapter 93A).
Even if the plaintiff had properly sent the requisite demand letter, the plaintiff would not be entitled to damages under G.L.c. 93A because the defendants’ actions were not unfair or deceptive. “A business practice will be found unfair, and therefore unlawful, under G.L.c. 93A, §2 ... if it can be found to be immoral, unethical, oppressive, or unscrupulous; or within the bounds of some statutory, common-law or other established concept of unfairness.” Ellis v. Safety Ins. Co., 41 Mass.App.Ct. 630, 640 (1996). The defendants’ conduct as described by the undisputed facts, does not meet that standard.
The technological problems with the computer systems were not the result of an unfair or deceptive trade practice by the defendants. The plaintiff points to many emails in the record which indicate that the defendants were aware of technological problems with some of their equipment. The concern about the quality of the Cape Internet hardware prompted the transfer of data to other machines. The emails the plaintiff *222 points to indicate that the defendants were making a good faith effort to remedy the technological problems with their system. Construing the evidence in the light most favorable to the plaintiff, a fact finder might infer that, at most, the defendants were incompetent or possibly even negligent in their maintenance of their computer systems. Even if a fact finder were to come to this conclusion, the plaintiff would not be entitled to damages under G.L.c. 93A because negligence is not an unfair and deceptive trade practice. See Walsh v. Chestnut Hill Bank and Trust Co., 414 Mass. 283 (1993) (upholding trial court’s determination that negligence did not constitute an unfair or deceptive trade practice).
The defendants also did not commit an unfair or deceptive trade practice when they altered the internet service contract with the plaintiff and other customers. Previous cases have specifically addressed the issue of the applicability of G.L.c. 93A to a change in contract terms following the purchase of a corporation. In Devine & Devine Food Brokers, Inc. v. Wampler Foods, Inc., discussed above with reference to the breach of contract claim, the First Circuit determined that the purchaser corporation had not violated chapter 93A by writing a new, more favorable contract. “It may be that [the purchaser corporation] wanted to have it both ways by securing [plaintiffs] services without the termination clause. But [the purchaser corporation] was up front in expressing this desire. It is not necessarily an unfair trade practice to get the better of the bargain.’’ 313 F.3d at 620. Here, Earthlink and OneMain were not legally required to continue the Cape Internet contract with the plaintiff and were acting within their rights in writing a new contract. Creating a new contract was not an unfair trade practice. The lack of a click-wrap agreement is also not sufficient evidence to indicate that the manner in which the defendants implemented the new contract was unfair and deceptive. The fact that a contract was merely posted on a site and not displayed in the click-wrap format does not, by itself, indicate an intention to deceive.
Whether an act is deceptive is determined from the circumstances of each case and thus summary judgment on claims pursuant to 93A is often not appropriate. Noyes v. Quincy Mut. Fire Ins. Co., 7 Mass.App.Ct. 723, 726 (1979). Here, however, there is no evidence on which a factfinder could conclude that the defendants’ acts were unfair or deceptive in the meaning of the statute.
ORDER
For the foregoing reasons, the Defendants’ Motion for Summary Judgment is ALLOWED.